April E. Olson (AZ #025281)
Glennas'ba Augborne (AZ#033702)
**ROTHSTEIN DONATELLI LLP**
1501 W. Fountainhead, Suite #360
Tempe, Arizona  85282
Telephone: (480) 921-9296
aeolson@rothsteinlaw.com
gaugborne@rothsteinlaw.com

Cammie Nichols (*Pro Hac Vice* application forthcoming*)*
Alicia Manuel (*Pro Hac Vice* forthcoming)
**ROTHSTEIN DONATELLI LLP**
500 4th Street, NW, Suite #400
Albuquerque, New Mexico  87102
Telephone:  (505) 243-1443
cmnichols@rothsteinlaw.com
alopez@rothsteinlaw.com

Matthew Campbell (*Pro Hac Vice* application forthcoming)
David Gover (*Pro Hac Vice* application forthcoming*)*
**NATIVE AMERICAN RIGHTS FUND**
1506 Broadway
Boulder, Colorado 80302
Telephone:  (303) 447-8760
mcampbell@narf.org
dgover@narf.org

*Attorneys for Plaintiffs Larissa Waln and Bryan Waln*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Larissa Waln and Bryan Waln, | |
| Plaintiffs, | Case No. |
| v. | **COMPLAINT** |
| Dysart School District; The Dysart | **JURY TRIAL DEMANDED** |

School District Governing Board;
Board Members Christine Pritchard,
Jay Leonard, Dawn Densmore,
Traci Sawyer-Sinkbeil, and Jennifer
Tanner; Dysart Superintendent Quinn
Kellis; Valley Vista High School;
Valley Vista High School Principal
Roberta Lockhart; Valley Vista High
School Assistant Principal Brad
Larremore; and Valley Vista High
School Assistant Principal Steven
Pierce,

                Defendants.

For their complaint against the Defendants, Plaintiffs Larissa Waln ("Larissa") and Bryan Waln ("Bryan") (collectively the "Walns" or "Plaintiffs") hereby allege and state:

**INTRODUCTION**

1.      Bryan and Larissa are seeking declaratory relief and damages against the Defendants, as set forth below, for prohibiting Larissa Waln from wearing her traditionally-beaded graduation cap and sacred eagle plume at her high school graduation, thereby infringing on the Walns' rights to the free exercise of religion and freedom of speech, and denying them equal protection of the law, under the Arizona Constitution, the Arizona Free Exercise of Religion Act ("FERA"), the United States Constitution and 42 U.S.C. § 1983.

2.     In spring 2019, Bryan and Larissa were preparing for Larissa's high school graduation ceremony.  Larissa, an enrolled member of the Sisseton Wahpeton Oyate, had been gifted a sacred and religious eagle plume by her paternal grandmother that was to be adorned on top of her graduation cap.  Bryan, Larissa's father and a Rosebud Sioux member, had begun the cultural and religious practice of intricately beading Larissa's graduation cap to conform to their religious beliefs and tradition.  The plume and beaded cap were to be gifted to Larissa to honor her achievement of high school graduation and passage into adulthood.

3.     On May 16, 2019, Larissa proudly wore her beaded cap with the eagle plume to the graduation commencement.  At the door of the State Farm Stadium , however, Larissa was refused entry to her Valley Vista High School graduation ceremony for the sole reason that she wore her religious attire – her beaded graduation cap and sacred eagle plume.

4.     The School District claimed that allowing Larissa to observe her religion in this way would prove disruptive to other students' experience of the graduation ceremony and, insisted, that "[n]o student would be allowed to participate in the commencement ceremony with an adorned or altered commencement cap," with absolutely no exceptions to be tolerated.

5.     Mere hours later, however, the School District permitted another student to wear a cancer awareness sticker on his graduation hat, in full view of District employees.  That student was permitted entry to his graduation ceremony in the same building just a few hours after Larissa was turned away.

6.     This civil rights action seeks to protect the rights of Native American students to wear religious beaded graduation caps and eagle feathers or plumes for their high school graduation ceremonies.

7.     Native American youth have one of the lowest graduation rates of any demographic in the United States.[1]  This is rooted in 100 plus years of federal Indian policy aimed at destroying indigenous identity and forcing Native Americans to assimilate into American culture.[2]

8.     In the 1870s, the United States Government began taking Native American children from their parents and shipping them off to boarding schools where they were forcibly stripped of their culture, tradition, and language.  A

---

[1] National Congress of American Indians Resolution # SD-15-006, *In Support of Allowing Native Students to Wear Eagle Feathers at High School Graduation*, October 23, 2015, available at http://www.ncai.org/attachments/Resolution_HbagAuSKnphEdkdCOEBsZFOvRqiiouBqVfVmvxtmvkHdGBKeGmv_SD-15-006.pdf

[2] *See* Zoey Serebriany, *Right to Regalia:  Let Those Feathers Fly at Graduation*, June 3, 2019, available at: https://www.lakotalaw.org/news/2019-06-03/right-to-regalia.

clearly stated purpose of these schools was to "kill the Indian…and save the man."[3]

9.     Native American children in boarding schools were forced to cut their hair, get rid of their traditional regalia, and punished for speaking their own language.  Many children died or ran away.

10.     These forced assimilative practices for Native American youth did not end until the 1970s.  Today, many Native American adults are survivors of boarding schools and are now raising their own children.

11.     In fact, Bryan's grandfather was taken from his family and forced to live in a boarding school.  Bryan's grandfather was afraid to teach his children and grandchildren the traditional ways for fear that they would also be taken.

12.     Given this history, high school graduation is a deeply significant event in Native American culture and religion and many students are honored with eagle feathers or plumes for this event.  "An eagle feather, for instance, signifies the strength it took to reach this milestone and the resilience it will take to continue into the next stages of life."[4]

13.     The Walns submit this Complaint against Defendants the Dysart School District, the Dysart School District Governing Board (the "Board"), Board

_____

[3] *Id.*

[4] *Id.*

5

Member Christine Pritchard, Board Member Jay Leonard, Board Member Dawn Densmore, Board Member Traci Sawyer-Sinkbeil, Board Member Jennifer Tanner, Dysart Superintendent Quinn Kellis, Valley Vista High School, Valley Vista High School Principal Roberta Lockhart, Valley Vista High School Assistant Principal Brad Larremore, and Valley Vista High School Assistant Principal Steven Pierce (collectively the "Defendants").

**JURISDICTION AND VENUE**

14.     This action also arises under the First and Fourteenth Amendments of the United States Constitution and applicable federal law governing the rights of citizens to the free exercise of religion and speech as well as equal protection under the law.  U.S. Const. amends. I and XIV.  This court has federal questions jurisdiction under 28 U.S.C. § 1331.

15.     Plaintiffs allege a deprivation of rights under color of a state or local authority under 42 U.S.C. § 1983 and seek damages for the deprivation.  This court has federal question jurisdiction under 28 U.S.C. § 1331.

16.     This action also arises under Arizona constitutional and statutory law, specifically the Arizona Constitution's Free Speech clause (Ariz. Const. art. 2, § 6); Religious Toleration Clause (Ariz. Const. art. 20 ¶ 1); and Arizona Free Exercise of Religion Act (A.R.S. § 41-1493 et seq.).  The court has supplemental pendant claim jurisdiction under 28 U.S.C. § 1367.

17.     Venue in this court is proper under 28 U.S.C. § 1391(b)(2) as the events which gave rise to the claims took place in this federal district.

**PARTIES**

18.     Plaintiff Larissa Waln is a citizen of the State of Arizona and an enrolled member of the Sisseton Wahpeton Oyate, a federally-recognized Indian Tribe. Plaintiff Larissa Waln was a minor during the relevant times discussed herein.

19.     Plaintiff Bryan Waln is Larissa's father. Bryan is also a citizen of the State of Arizona and an enrolled member of the Rosebud Sioux Tribe.

20.     Defendant Dysart School District is a school district and a political subdivision of the State of Arizona.

21.     The Dysart School District Governing Board is the five-member board that governs the Dysart School District.

22.     Defendants Christine Pritchard, Jay Leonard, Dawn Densmore, Tracy Sawyer-Sinkbeil, and Jennifer Tanner are all Members of the Dysart School District Governing Board. Defendants are sued in their official and individual capacities.

23.     Defendant Quinn Kellis is the Superintendent of the Dysart School District. Defendant is sued in his official and individual capacity.

24.     Defendant Valley Vista High School is a high school under the supervision and control of the Dysart School District.

25.     Defendant Roberta Lockhart is the Principal of Valley Vista High School. Defendant is sued in her official and individual capacity.

26.     Defendant Brad Larremore is the Assistant Principal of Valley Vista High School. Defendant is sued in his official and individual capacity.

27.     Defendant Steven Pierce is the Assistant Principal of Valley Vista High School. Defendant is sued in his official and individual capacity.

## FACTUAL ALLEGATIONS

28.     Larissa Waln was a senior at Valley Vista High School for the 2018-2019 school year. She was scheduled to walk in her graduation ceremony on May 16, 2019 at State Farm Stadium in Glendale, Arizona.

29.     Larissa is an enrolled member of the Sisseton Wahpeton Oyate, a federally recognized Indian tribe.

30.     Throughout her life, Larissa has participated in cultural, traditional, and religious practices of her tribe and her father's tribe.

31.     Bryan Waln is Larissa's father and is an enrolled member of the Rosebud Sioux Tribe.  Bryan is married to Levette Waln, Larissa's mother.

32.     Levette is an enrolled member of the Sisseton Wahpeton Oyate Tribe.

33.     In anticipation of Larissa's high school graduation, Bryan began to traditionally bead a graduation cap for his daughter Larissa in April of 2019.

34.     Beading a graduation cap is a cultural and religious practice by Native American people that is usually done by a family member.

35.     Larissa also helped bead her graduation cap.  Larissa's cap took Bryan and Larissa approximately 48 hours over the course of a week to bead.

36.     Beading is a "ritual that binds the community together."[5]  Beading has healing properties and involves aspects of both cultural and spiritual identity for many Native Americans, including the Rosebud Sioux and the Sisseton Wahpeton Oyate. Beading often begins with praying and smudging, a Native American religious practice involving the burning of sage or other medicinal plants.

37.     On the Rosebud Sioux Reservation (the home of Bryan's tribe), it is tradition for all high school graduates to bead caps or wear beaded caps.  Beading is a cultural and spiritual event for the family. In the case of high school graduates, the beading of the graduation cap signifies an important accomplishment and a transition into adulthood.

38.     Larissa was also honored with an eagle plume to be worn on her graduation cap.

---

[5] *See* Malinda Joy Gray, Beads, *Symbols of Indigenous Cultural Resilience and Value*, 2017, Department of Anthropology – University of Toronto  *available at* https://tspace.library.utoronto.ca/bitstream/1807/82564/3/Gray_Malinda_J_2 01711_MA_thesis.pdf.

39.     Traditionally, girls are given eagle plumes and boys are given eagle feathers.

40.     Larissa's eagle plume was blessed in a religious ceremony on the Rosebud Sioux Reservation in South Dakota and later presented to Larissa by her paternal grandmother.

41.     To many tribes, including the Rosebud Sioux and the Sisseton Wahpeton Oyate, eagles are revered and hold meaningful roles in religion and traditional stories.  Eagles are considered "the master of the sky" and the closest to God or the Creator.

42.     Indeed, the significance of eagle feathers to Native American religious beliefs and practices is well established in the law.  *See McAllen Grace Brethren Church v. Salazar*, 764 F.3d 465, 472 (5th Cir. 2014) ("[T]he eagle feather is sacred to the religious practices of many American Indians."); *United States v. Hardman*, 297 F.3d 1116, 1126-27 (10th Cir. 2002) (*en banc*) ("The eagle feather is sacred in many Native American religions, including claimants'. Any scheme that limits their access to eagle feathers therefore must be seen as having a substantial effect on the exercise of religious belief.") (footnote omitted); Policy Concerning Distribution of Eagle Feathers for Native American Religious Purposes, 59 Fed. Reg. 22953 (Apr. 29, 1994) ("Eagle feathers hold a sacred place in Native American culture and religious practices."); *see also* 6 U.S.C. § 668a (creating religious exception for

Native Americans to law forbidding possession of eagle feathers and parts); 50 C.F.R. § 22.22.

43.    An eagle feather is given in times of great honor and is meant to signify a transition in life, such as graduation.

44.    For the Walns, the eagle feather must be worn on the cap and to cover it up under a gown or cap would desecrate or disrespect the feather (and therefore its sacredness).

45.    High school graduation is a deeply significant event to Larissa and Bryan and their family.

46.    Larissa wanted to observe her religion and culture by wearing her beaded cap and sacred eagle plume during her high school graduation ceremony. This ritual held the same significance to the Waln family as other religions transition ceremonies, such as a bar or bat mitzvah or confirmation.

47.    Here is a photograph detailing Larissa's finished beaded cap with her eagle plume attached:



48.     As can be seen in the photo, Larissa's cap also included a medicine wheel.

49.     The medicine wheel is a sacred symbol that represents various religious and spiritual aspects of the universe.

50.     "The Medicine Wheel, sometimes known as the Sacred Hoop, has been used by generations of various Native American tribes for health and healing."[6]

51.     Bryan had previously beaded graduation caps for his older daughter in 2015 and older son in 2017.  Both children wore their beaded graduation caps and eagle feathers during their graduation ceremonies at Desert Vista High School

---

[6] *See* National Library of Medicine, *Medicine Ways: Traditional Healers and Healing,* https://www.nlm.nih.gov/nativevoices/exhibition/healing-ways/medicine-ways/medicine-wheel.html (last visited April 17, 2020).

in Phoenix, Arizona. Given this, Bryan had no reason to doubt that Larissa would be afforded the same right to speak and express her religious beliefs.

52. On May 6, 2019, Larissa learned at a senior meeting from Assistant Principal Brad Larremore that she might not be able to wear her beaded cap and eagle plume during her graduation ceremony. Larissa promptly informed her parents.

53. After learning that Larissa may not be able to wear her beaded cap and eagle plume, Bryan called Assistant Principal Brad Larremore to express his concerns. Mr. Waln informed Mr. Larremore that there was nothing in the Student Handbook of the District that prohibits Native American religious regalia at graduation. Bryan also explained that wearing a beaded cap and eagle plume at graduation was a very important religious exercise. Bryan requested that the school allow Larissa to wear her beaded cap and blessed eagle plume for graduation.

54. Assistant Principal Larremore refused Bryan's requests for a religious accommodation for Larissa.

55. On May 9, 2019, Bryan attended a parent senior class meeting led by Assistant Principal Larremore. Assistant Principal Larremore did not discuss whether Native American religious regalia would be permitted at the graduation ceremony with parents or further address the issue with Bryan.

56. On the same day as the senior meeting, May 9, 2019, Bryan emailed Valley Vista High School Principal Roberta Lockhart, Assistant Principal Larremore, Assistant Principal Steven Pierce, District Superintendent Quinn Kellis, and members of the District Governing Board to express his frustration with Larissa not being allowed to wear her cap or express her religious traditions in a harmless manner.

57. On May 10, 2019, Bryan met with Principal Lockhart.

58. At the May 10th meeting with Principal Lockhart, Bryan again explained the religious significance of the beaded cap and eagle plume. Principal Lockhart acknowledged that other high schools in Arizona allowed beaded caps and eagle feathers, but said that if she allowed Larissa's beaded cap/plume then "I'd have to allow the next person" and it would "be a snowball effect." Ignoring the religious distinction of Larissa's cap, Principal Lockhart went on to state that she wouldn't have grounds to deny someone who wanted to put "Captain America" on their hats.

59. On May 12, 2019, a tribal spiritual leader, Egan "Butch" Artichoker, also emailed Principal Lockhart explaining the cultural and religious significance of Larissa wearing the beaded cap and blessed eagle plume during graduation. Mr. Artichoker pleaded with Ms. Lockhart to rethink her position and described

the high rates of suicide for native youth as well as the cultural devastation from boarding schools and denominational schools.

60.    Running out of time and faced with the possibility that his daughter would have to choose between participating in her graduation ceremony or honoring her religious beliefs, Bryan reached out to the Native American Rights Fund ("NARF") and the American Civil Liberties Union ("ACLU") of Arizona for help.

61.    On May 13, 2019, Bryan emailed the District Governing Board, including President Christine Pritchard, Board Member Jay Leonard, Board Member Dawn Densmore, Board Member Traci Sawyer-Sinkbeil, Board Member Jennifer Tanner, and Principal Lockhart and Superintendent Quinn Kellis.

62.    In the May 13th email to the District Governing Board, Principal Lockhart and Superintendent Kellis, Bryan explained that allowing Larissa to wear her traditionally beaded cap and eagle plume would "allow her to follow in her Native American Cultures spirituality and religion as we honor our child in this time of celebration."  Bryan also explained (again) the religious significance of the eagle plume and informed the School District that Larissa's eagle plume was blessed through a sacred ceremony.

63.    On May 13, 2019, NARF sent a letter to Superintendent Quinn Kellis on behalf of Larissa and Bryan Waln, attached as Exhibit 1.  In that letter, NARF

explained the important religious significance of the eagle plume to Native Americans and reminded the District of the protections afforded to the free exercise of religion.

64.     On May 14, 2019, Bryan met with Superintendent Kellis to further discuss the matter.  Bryan explained (again) the significance of Larissa's eagle plume and beaded cap and informed Superintendent Kellis that Arizona's Free Exercise of Religion Act protects Larissa's right to exercise her religion.

65.     At the May 14th meeting, Superintendent Kellis acknowledged that he had read Bryan's May 13th email to the District Governing Board regarding Larissa's right to wear her beaded cap and related correspondence.

66.     At the May 14th meeting, Bryan explained to Superintendent Kellis that Dysart School District did not have any policies that prohibited Larissa from wearing her beaded cap and gown as an exercise of her religion.   Superintendent Kellis replied that "there's nothing in the policy that says a student can't blow an airhorn at graduation" and "there's nothing in the policy that says a student can't eat nachos at the graduation ceremony."

67.     At the May 14th meeting, Superintendent Kellis was adamant that Larissa could not wear her eagle plume on her cap, but he offered to allow her to wear it in her hair, around her neck or under her robe.

68.     In response to Superintendent Kellis' offer to allow Larissa to wear the eagle plume in her hair, around her neck or under her robe, Bryan specifically explained to Superintendent Kellis the importance of eagles and their feathers in his religion and how covering up the eagle feather, such as putting it under Larissa's gown, would be desecrating to his religion.

69.     Superintendent Kellis still refused to allow Larissa to wear her beaded cap and eagle plume.  Mr. Kellis also explained that once you allow a student to put something on a hat, you open the door. Referring to Phoenix Union, Superintendent Kellis explained, "so because they allowed that to happen, now students could put Pikachu on their, on their hat.  So basically, anything goes because they can't – they – going back to the U.S. Supreme Court freedom of speech, it went from a limited forum to an open forum once they opened that door."

70.     On May 15, 2019, the District responded to the NARF letter through their legal counsel, Gust Rosenfeld.  In that letter the District states,

> Your letter dated May 13, 2019 requests that the District honor the student's First Amendment right to free exercise of religion and Arizona's religious freedom statute by permitting the student to adorn her commencement cap with beads and wear an eagle feather during her ceremony.  The District denies that request.

*See* Letter from J. MacLennan, May 15, 2019, attached as Exhibit 2.

71.     The Gust Rosenfeld letter then proceeded to discuss *only free speech* jurisprudence and concluded,

> The District has imposed a reasonable restriction on student speech through its commencement dress code to preserve the sanctity and formality of the commencement ceremony. This restriction was communicated in a timely manner to Valley Vista parents and guardians on or about April 25, 2019.

*Id.* The letter attached a separate letter, dated April 25, 2019, which was allegedly sent to Valley Vista High School seniors.

72.     Plaintiffs never received a copy of the April 25, 2019 letter because it was mailed to the wrong address.

73.     On May 15, 2019, the ACLU of Arizona sent a letter to Superintendent Quinn Kellis and the District Governing Board President on behalf of Larissa and Bryan Waln, attached as Exhibit 3.  This letter explained the religious significance of eagle feathers and how Arizona's FERA protects the "very type of religious exercise in which Ms. Waln seeks to engage here."  The letter also explained why wearing the eagle feather in an alternate way to comply with the policy would desecrate the object and violate religious tenants.

74.     The District responded to the ACLU letter through its legal counsel and again cited *only* to law regarding free speech applicable to employees, not the free exercise of religion of a student.  *See* Letter from Gust Rosenfeld to A. Parris, May 15, 2019, attached as Exhibit 4.

75.     In a reply letter that same day, the ACLU pointed out that the law cited by Gust Rosenfeld was irrelevant to Larissa's request for religious accommodation explaining,

> [T]he case law you cite governing public employees' speech rights is completely irrelevant to Ms. Waln's request for religious accommodation. This matter pertains to the religious-freedom rights of a student, not the free-speech rights of public employees. Even if the District claims it is not violating the First Amendment of the U.S. Constitution, it must also show that it's conduct complies with the Arizona FERA. Instead, your letter simply ignores this state religious-freedom statute.

*See* Reply letter from A. Parris to J. MacLennan, May 15, 2019, attached as Exhibit 5. The District did not further reply or explain how its conduct complied with FERA.

76.     During the time while Bryan was advocating for his daughter to wear her religious attire at graduation, Bryan was experiencing extreme stress and got little sleep. He spent hours researching and writing letters, hoping the District would change its mind.

77.     Bryan also felt angry and frustrated at the situation. Bryan felt like he and Larissa were experiencing what his grandfather felt when he went away to boarding school. Bryan felt like the District was trying to take away his culture and religion.

78.     In the days leading up to graduation, Larissa experienced extreme stress, sadness, depression, and frustration. She had frequent migraine headaches. Graduating while wearing her beaded cap and sacred eagle plume was incredibly important to Larissa.  Throughout her life, Larissa had experienced discrimination as a Native American and had been told before that she would never graduate because she was Native American.   She wanted to prove this stereotype wrong.

79.     On May 16, 2019, hoping the District had reviewed the law, Larissa donned her graduation gown and traveled with family to State Farm Stadium in Glendale, Arizona, the site of Valley Vista High School graduation ceremony. Some of Larissa's family had traveled all the way from South Dakota for this special event.  Larissa was scared and nervous, but hopeful.

80.     Wearing her gown and holding her beaded cap and eagle plume, Larissa attempted to enter State Farm Stadium in Glendale, Arizona.  At the door, Valley Vista High School officials, including Assistant Principal Steven Pierce, refused to even allow Larissa to enter the building.

81.     After Larissa was turned away from her graduation ceremony, Larissa had to walk past a long line of her fellow classmates.  Larissa felt shame and humiliation.  The way Larissa describes that long walk is: "I could see their faces watching me."

82.     For the Walns, this once in a lifetime event aimed at honoring Larissa for her achievement and transition into adulthood, and recognizing their religious and cultural beliefs, turned into a day of trauma, stress, embarrassment, and emotional distress.

83.     That same day, May 16, 2019, another student in the School District was not denied entry, but rather permitted to wear what appears to be a cancer awareness sticker on his graduation cap at the Shadow Ridge High School graduation, which was also held at State Farm Stadium after the Valley Vista High School graduation.

84.     Shadow Ridge High School is likewise part of the Dysart School District.

85.     Despite the District's pronouncement that no student would be permitted to participate in any graduation ceremony with an adorned cap, this student participated with an adorned cap in full view of District and school faculty.

86.     Here is a photo of the Shadow Ridge High School student's adorned cap:



87.     Both Valley Vista High School and Shadow Ridge High School are part of the Dysart School District.

88.     The Dysart School District held graduation ceremonies for each of its high schools at State Farm Stadium in Glendale, Arizona.  The graduations were open to the district community and tickets were not required to attend.

89.     The Dysart School District Handbook does not address graduation attire.

90.     Other students in the Dysart School District were permitted to express their educational achievement by wearing cords, sashes, medals, and other items for their graduation ceremony.

91.     Based on information and belief, other students in the Dysart School District had adorned graduation caps or wore prohibited items on their person during their graduation ceremonies.

92.     The Dysart School District Governing Board says that it "is committed to a policy of nondiscrimination in relation to race, color, religion, sex, age, national origin and disability.  This policy will prevail in all matters concerning staff members, students, the public, educational programs and services, and individuals with whom the Board does business."  Governing Board Policy No. 1.3, adopted August 22, 2018.

93.     To this day, Larissa Waln struggles with feelings of personal shame, depression, and outrage as a result of Defendants' discriminatory conduct, their denial of her ability to make a culturally significant transition to adulthood in the presence of her visiting family, and their rejection of her religious and cultural beliefs in full view of her classmates and friends.  The after-effects of this rejection continue to haunt Larissa as she attempts to navigate the next phase of her life.

94.     Likewise, Bryan Waln continues to struggle with persistent feelings of depression, anger, and personal outrage that he was unable to protect his daughter from the actions of the District and its employees, and by the District's casual rejection of his and his family's sacred religious beliefs despite explicitly informing the District of those beliefs.

95.     The actions of named Defendants Pritchard, Leonard, Densmore, Sawyer-Sinkbeil, Tanner, Kellis, Lockhart, Larremore, and Pierce (collectively, hereinafter, "the Individual Defendants") were in reckless disregard or callous indifference to the Walns clearly established rights and/or were outrageous and aggravated and done with an "evil mind."

**FIRST CAUSE OF ACTION**

**(Plaintiff Larissa Waln's Claim Against the Individual Defendants in Their Individual Capacities and Defendant Dysart School District for Violation of Her Right to Free Exercise of Religion under the First and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. § 1983)**

96.     Plaintiffs reallege and incorporate by reference all of the preceding allegations.

97.     The First Amendment of U.S. Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."   U.S. Const. amend I.   The free exercise clause of the First Amendment is applicable to the states through the Fourteenth Amendment.

98.     Plaintiff Larissa Waln has a right to the free exercise of her religion under the First Amendment.

99.     At all times relevant herein, the Individual Defendants acted under the color of the law of the State of Arizona and their actions had the effect of depriving Larissa of her federal constitutional rights, specifically including the free exercise clause of the First Amendment.

100.    A party may bring suit under 42 U.S.C. § 1983 for deprivations of rights, immunities or privileges of citizenship under color of state law or authority.

101.    Here, the Individual Defendants' and District's regulation of Plaintiff Larissa Waln's graduation dress of a traditionally-beaded cap and sacred eagle plume was not of general application – as evidenced by the secular accommodation provided to other graduating students – and was plainly targeted at religion, specifically at Larissa's religious beliefs as a Native American.

102.    Such a regulation can pass muster only if it is narrowly-tailored to advance a compelling government interest.  Here, the Individual Defendants' imposition on Larissa's free exercise of her religious rights was in no way narrowly tailored to advance such an interest – as Defendants can in no way have a compelling interest in suppressing only one student's silent, non-disruptive expression of religious conviction and cultural pride (expressed through adornments that the District has permitted on other occasions), while simultaneously permitting other students to express their activism and secular interests, through permitted or tolerated adornments on their caps and/or gowns.

103.    The Defendant Dysart School District is likewise liable for violating Larissa's right to the free exercise of her religion  because discriminatory actions against her were taken by officials with final policymaking authority – namely,

Dysart Superintendent Quinn Kellis and Governing Board members Pritchard, Leonard, Densmore, Sawyer-Sinkbeil, and Tanner.

104. Accordingly, Defendants' refusal to allow Plaintiff Larissa Waln to wear her traditionally-beaded cap and sacred eagle plume at her high school graduation ceremony violated Plaintiffs' rights to the free exercise of religion under the First Amendment to the U.S. Constitution.

### SECOND CAUSE OF ACTION

**(Plaintiff Larissa Waln's Claim Against the Individual Defendants in their Individual Capacities and Defendant Dysart School District for Violation of Her Right to Freedom of Speech under the First and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. § 1983)**

105. Plaintiffs reallege and incorporate by reference all of the preceding allegations.

106. The First Amendment to the U.S. Constitution provides that "Congress shall make no law …. abridging the freedom of speech, or of the press." U.S. Const. amend I. The free speech clause of the First Amendment is applicable to the states through the Fourteenth Amendments.

107. Plaintiff Larissa Waln has a right to free speech under the First Amendment.

108. At all times relevant herein, the Individual Defendants acted under the color of the law of the State of Arizona and their actions had the effect of

depriving Plaintiff Larissa Waln her federal constitutional rights, specifically including the free speech clause of the First Amendment.

109.    A party may bring suit under 42 U.S.C. § 1983 for deprivations of rights, immunities or privileges of citizenship under color of state law or authority.

110.    The Individual Defendants' refusal to allow Larissa Waln to wear her traditionally-beaded cap and eagle plume at her high school graduation ceremony violated both Plaintiffs' right to free speech under the U.S. Constitution.

111.    Silent, passive expressive action unaccompanied by any disorder or disturbance is pure speech protected by the First Amendment.  Pure speech involves mediums that predominately serve to express thoughts, emotions, or ideas.  Plaintiff Larissa Waln's desire to wear religious tribal regalia was a desire to engage in purely expressive conduct.

112.    Alternatively, Plaintiff Larissa Waln's conduct carried an expressive component that was sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments, because it was intended to convey a particularized religious and cultural message that was likely to be understood by others.

113.    The Individual Defendants' interest in restricting Plaintiff Larissa Waln's desired exercise of her free speech right was not substantial, as evidenced by its accommodation of other students' symbolic speech.

114. The Valley Vista High School graduation ceremony was a limited public forum. Time, place, and manner regulations must be reasonable, and, content-based prohibitions, like the one at issue here, must be narrowly-drawn to effectuate a compelling state interest.

115. Here, the regulation at issue was self-evidently content-based, because other students in the school district were not prohibited from adorning their caps with stickers expressing other viewpoints (namely, to raise awareness and/or funding for social causes). The Individual Defendants could have no compelling state interest in advancing one student's interest in promoting cancer awareness over Plaintiff Larissa Waln's quiet expression of her sacred religious beliefs.

116. Even if the regulation at issue is found to be content-neutral – which, in practice, it clearly was not -- it still violated Plaintiff Larissa Waln's constitutional rights because (1) it did not further an important or substantial government interest (as Larissa's wearing her sacred eagle plume and traditionally-beaded cap was in no way disruptive of any legitimate pedagogical interest); (2) the Individual Defendants' interest was plainly related to the suppression of free expression, as evidenced by the accommodations provided to other students; and (3) the incidental restriction on Larissa's First Amendment freedoms was greater than was essential to furtherance of that interest.

117.    The Defendant Dysart School District is likewise liable for violating Plaintiffs' free speech rights because discriminatory actions against the Plaintiffs were taken by officials with final policymaking authority – namely, Dysart Superintendent Quinn Kellis and Governing Board members Pritchard, Leonard, Densmore, Sawyer-Sinkbeil, and Tanner.

### THIRD CAUSE OF ACTION

**(Plaintiff Larissa Waln's Claim Against the Individual Defendants in their Individual Capacities and Defendant Dysart School District for Violation of Her Right to Equal Protection of the Laws under the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983)**

118.    Plaintiffs reallege and incorporate by reference all of the preceding allegations.

119.    The Fourteenth Amendment to the U.S. Constitution provides that no state shall "deny to any person within its jurisdiction equal protection under the laws." U.S. Const. amend XIV, §1.

120.    A party may bring suit under 42 U.S.C. § 1983 for deprivations of rights, immunities or privileges of citizenship under color of state law or authority.

121.    At all times relevant herein, Defendants acted under the color of the law of the State of Arizona and their actions had the effect of depriving Plaintiff Larissa Waln of her federal constitutional rights, specifically the Equal Protection Clause of the Fourteenth Amendment.

122.     The desire and intent of Plaintiff Larissa Waln to adorn her graduation robe with tribal regalia consisting of a traditionally-beaded cap and sacred eagle plume constituted a desire to engage in expression protected by the First Amendment to the United States Constitution.

123.     At different intervals throughout this case, as set forth above, each of the named Individual Defendants acted to prevent Plaintiff Larissa Waln from exercising her fundamental constitutional rights.  As a consequence, Larissa was prevented from attending the Valley Vista High School graduation ceremony because she, acting with the support of her father, Plaintiff Bryan Waln, declined to compromise her sacred freedoms by removing her regalia.

124.     Plaintiff Larissa Waln was similarly situated in all relevant respects to other graduating high school students in the Dysart School District.

125.     Other similarly situated high school graduates from Dysart School District were allowed to walk in their high school graduation ceremonies, even though their caps were adorned with accoutrements expressing a particular point of view, though not the views of a religious minority group.

126.     Based on information and belief, other similarly-situated graduates from Dysart School District were allowed to wear non-approved attire at their high school graduation ceremonies, including in the same building on the same day as Plaintiff Larissa Waln's graduation.

127.   Moreover, high school students from other schools in Arizona have been permitted to wear traditionally-beaded graduation caps or eagle feathers or eagle plumes to their high school graduation ceremonies, to denote their religious and cultural beliefs.

128.   The Individual Defendants' decision to forbid Plaintiff Larissa Waln from exercising her First Amendment rights constituted intentional, invidious discrimination against her because of her religious beliefs.   The Individual Defendants can have no compelling reason that would justify their banning Plaintiff Larissa Waln's religious dress.

129.   The Defendant Dysart School District is likewise liable for violating Plaintiff Larissa Waln's equal protection rights because discriminatory actions against her were taken by officials with final policymaking authority – namely, Dysart Superintendent Quinn Kellis and Governing Board members Pritchard, Leonard, Densmore, Sawyer-Sinkbeil, and Tanner.

130.   Defendants' decision to forbid Plaintiff Larissa Waln from exercising her right to the free exercise of her religion by forbidding her from wearing her sacred eagle plume and symbolically-significant beaded cap was arbitrary, capricious, and irrational discrimination that deprived Larissa of equal protection of the law guaranteed by the Fourteenth Amendment to the United States

Constitution. Defendants' acts were intentional, malicious, willful, and in gross and reckless disregard of Plaintiff Larissa Waln's constitutional rights.

### FOURTH CAUSE OF ACTION

**(Plaintiffs Larissa and Bryan Waln's Claims Against the Individual Defendants in their Individual Capacities and Defendant Dysart School District for Violation of the Right to Free Exercise of Religion under the Arizona Constitution and the Arizona Free Exercise of Religion Act (FERA))**

131.    Plaintiffs reallege and incorporate by reference all of the proceeding allegations.

132.    Article 20, ¶ 1 of the Arizona Constitution protects every inhabitant of the State from mistreatment of their person or their property on account of his or her form of religious worship and provides that "no inhabitant of this state shall ever be molested in person or property on account of his or her mode of religious worship, or lack of the same."

133.    The Arizona Free Exercise of Religion Act ("FERA") guarantees that the "free exercise of religion is a fundamental right that applies in this state, even if laws, rules or other government actions are facially neutral." A.R.S. § 41-1493.01(A).

134.    Under FERA, the government cannot substantially burden a person's exercise of religion unless it proves the application of the burden is both: 1) In furtherance of a compelling government interest; and 2) The least restrictive means of furthering that compelling interest. A.R.S. § 41-1493.01.

135.   Plaintiff Larissa and Bryan Waln's shared desire for Larissa to wear her beaded graduation cap and sacred eagle plume were motivated by their sincerely-held religious beliefs as members of the Sisseton Wahpeton Oyate and Rosebud Sioux Tribe.  Larissa's planned attire constituted an exercise of religion within the meaning of FERA.

136.   The Defendants' refusal to allow Larissa to wear her traditionally beaded cap and eagle plume substantially burdened Larissa because she was forced to choose between attending a deeply significant life event or forsaking her religious beliefs.

137.   Plaintiff Bryan Waln's free exercise of his religious beliefs was no less burdened than his daughter Larissa's, within the broader protections afforded by FERA.  Bryan collaborated with Larissa on all aspects of her regalia and personally beaded Larissa's graduation cap.  Her planned appearance was a manifestation of their shared religious beliefs, which were inextricably linked to their place within a shared tribal community.

138.   Defendants did not have a compelling government interest in prohibiting Larissa Waln from wearing this religious attire at her graduation ceremony, particularly when other students in the same school district were permitted to adorn their caps and gowns with other (secular) accoutrements.

139. Even if there was a compelling interest in regulating attire at high school graduation ceremonies, which there decidedly was not, prohibiting Larissa from wearing her sacred eagle plume on her traditionally beaded cap was not the least restrictive means of furthering that interest, particularly when other students were allowed to walk in their graduation ceremonies with their graduation caps adorned with stickers or other non-school sanctioned items on their person.

140. Accordingly, Defendants' refusal to allow Plaintiff Larissa Waln to wear her traditionally-beaded cap and sacred eagle plume at her high school graduation ceremony violated both Plaintiffs' rights to the free exercise of religion under FERA.

## FIFTH CAUSE OF ACTION

**(Plaintiffs Larissa and Bryan Waln's Claims Against the Individual Defendants in their Individual Capacities and Defendant Dysart School District for Violation of their Right to Freedom of Speech under the Arizona Constitution)**

141. Plaintiffs reallege and incorporate by reference all of the preceding allegations.

142. The Arizona Constitution guarantees that "[e]very person may freely speak, write, and publish on all subjects, being responsible for abuse of that right." Ariz. Const. art. II, § 6. The free speech clause in the Arizona Constitution is broader than the free speech clause in the First Amendment to the U.S.

Constitution, but is frequently analyzed under the same standards. *Mountain States Tel. & Tel. Co. v. Ariz. Corp. Comm'n,* 160 Ariz. 350, 354–55 (1989).

143. Defendants' refusal to allow Larissa Waln to wear her traditionally-beaded cap and sacred eagle plume at her high school graduation ceremony violated *both* Plaintiffs' – as co-creators' of Larissa's sacred religious attire -- right to free speech under Arizona law, taking into account the broader protections afforded by the Arizona constitution.

144. The Valley Vista High School graduation ceremony was a limited public forum. Time, place, and manner regulations must be reasonable, and, content-based prohibitions, like the one at issue here, must be narrowly-drawn to effectuate a compelling state interest.

145. The Arizona Supreme Court has consistently held that "'narrow specificity is a requirement of a time, place, and manner regulation" under both the federal and State constitutions. *See Mountain States*, 160 Ariz. at 356.

146. Here, the regulation at issue was self-evidently content-based, because other students in the school district were not prohibited from adorning their caps with stickers expressing other viewpoints (namely, to raise awareness and/or funding for social causes). The District and the Individual Defendants could have no compelling state interest in advancing one student's interest in

promoting cancer awareness over Plaintiff Larissa Waln's quiet expression of her and her father's sacred religious beliefs.

147.     Even if the regulation at issue is found to be content-neutral – which, in practice, it clearly was not -- it still violated both Plaintiffs' constitutional rights because (1) it did not further an important or substantial government interest (as Larissa's wearing her sacred eagle plume and traditionally-beaded cap was in no way disruptive of any legitimate pedagogical interest); (2) the District and the Individual Defendants' interest was plainly related to the suppression of free expression, as evidenced by the accommodations provided to other students; and (3) the incidental restriction on both Plaintiffs' First Amendment freedoms was greater than was essential to furtherance of that interest.

148.     The Defendant Dysart School District is likewise liable for violating Plaintiff Larissa Waln's free speech rights because discriminatory actions against her were taken by officials with final policymaking authority – namely, Dysart Superintendent Quinn Kellis and Governing Board members Pritchard, Leonard, Densmore, Sawyer-Sinkbeil, and Tanner.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgement as follows:

149.     That this Court enter a Declaratory Judgment declaring that Defendants' policies and practice of banning Native American students from

expressing their religion through traditionally beaded caps and eagle feathers or plumes violate the Arizona Constitution, the Arizona FERA, and the First and Fourteenth Amendments to the United States Constitution; and

150.   Grant to the Plaintiffs compensatory and punitive damages; and

151.   Grant to the Plaintiffs the reasonable costs and expenses of this action, including attorney's fees, in accordance with 42 U.S.C. § 1988 and A.R.S. § 41-1493.01(D); and

152.   Grant such other and further relief as this Court deems just and proper.

**JURY TRIAL DEMAND**

Plaintiffs hereby demand a trial by jury.

RESPECTFULLY SUBMITTED this 24th day of April, 2020.


*/s/ April E. Olson*
April E. Olson (#025281)
Glennas'ba Augborne (AZ#033702)
Cammie Nichols (*Pro Hac Vice*)
Alicia Manuel (*Pro Hac Vice*)
**ROTHSTEIN DONATELLI LLP**

Matthew Campbell (*Pro Hac Vice*)
David Gover (*Pro Hac Vice*)
**NATIVE AMERICAN RIGHTS FUND**

*Attorneys for Plaintiffs*

# Exhibit 1

# Native American Rights Fund

1506 Broadway, Boulder, Colorado 80302-6296

(303) 447-8760 FAX (303) 443-7776
www.narf.org

**EXECUTIVE DIRECTOR**
John E. Echohawk

**LITIGATION MANAGEMENT COMMITTEE**
K. Jerome Gottschalk
Natalie A. Landreth
Melody L. McCoy

**ATTORNEYS**
Matthew L. Campbell
K. Jerome Gottschalk
David L. Gover
Melody L. McCoy
Steven C. Moore
Susan Y. Noe
Brett Lee Shelton
Joe M. Tenorio
Heather D. Whiteman Runs Him

**CHIEF FINANCIAL OFFICER**
Michael Kennedy

**DIRECTOR OF DEVELOPMENT**
Donald M. Ragona

**WASHINGTON OFFICE**
1514 P Street, NW (Rear)
Suite D
Washington, D.C. 20005-1910

Ph. (202) 785-4166
FAX (202) 822-0068

**ATTORNEYS**
Dan Lewerenz
Joel W. Williams

**ANCHORAGE OFFICE**
745 W. 4th Avenue, Ste. 502
Anchorage, AK 99501-1736

Ph. (907) 276-0680
FAX (907) 276-2466

**ATTORNEYS**
Heather R. Kendall-Miller
Natalie A. Landreth
Erin C. Dougherty Lynch
Matthew N. Newman
Wesley James Furlong

May 13, 2019

**<u>Via Email and Hard Copy to:</u>**
Dysart Unified School District
Quinn R. Kellis, Ed. D., Superintendent
15802 North Parkview Place
Surprise, AZ 85374
Email: super@dysart.org

Re: Right to Wear Eagle Feather and Traditional Regalia at Graduation

Superintendent Kellis:

The Native American Rights Fund ("NARF") is very concerned about the Dysart Unified School District's denial of LaRissa Waln's right to wear Native American religious and cultural items at her high school graduation. Ms. Waln, an enrolled member of the Sisseton-Wahpeton Sioux Tribe of South Dakota, is a senior at the Valley Vista High School. Ms. Waln wishes to wear an eagle feather and beaded cap during the graduation ceremony to be held May 16, 2019, but has been informed that this will not be allowed. Ms. Waln wishes to wear the feather for religious and spiritual reasons in order to honor her Native American heritage, and as a sign of her academic success in graduating high school. As described below, there are sound legal and policy reasons why Ms. Waln should be allowed to wear these items.

First, the School District should consider the important religious aspects of eagle feathers for Native Americans and the legal protections afforded to native religious practices. Both bald and golden eagles (and their feathers) are highly revered and considered sacred within Native American traditions, culture, and religion. They are honored with great care and shown the deepest respect. These feathers represent honesty, truth, majesty, strength, courage, wisdom, power, and freedom. Native Americans

believe that as eagles roam the sky, they have a special connection with God and carry with them the peoples' prayers. *See* Antonia M. De Meo, *Access to Eagles and Eagle Parts; Environmental Protection v. Native American Free Exercise of Religion*, 22 Hastings Const. L.Q. 771, 774-75 (1995) (noting that "Native Americans hold eagle feathers sacred and equate them to the cross or the Bible in western religion.").

The religious significance of eagle feathers to Native Americans is recognized and embedded in federal law and policy. In 1962, Congress enacted the Bald and Golden Eagle Protection Act, which extended from the Bald Eagle Protection Act of 1940 the prohibition on the take, transport, sale, barter, trade, import and export, and possession of bald eagles to golden eagles as well. The government realized that the passage of this act would severely impinge on the religious practices of many Native Americans, for whom the use of eagle parts is essential to many ceremonies. In order to allow Native Americans to continue to include both bald and golden eagle parts in their religious ceremonies, the government provided for exemptions. The law also permits the traditional gifting of eagle feathers for Native Americans. On April 29, 1994, President Clinton signed an Executive Memorandum entitled "Policy Concerning Distribution of Eagle Feathers for Native American Religious Purposes." 59 Fed. Reg. 22953. That Executive Memorandum noted that "[e]agle feathers hold a sacred place in Native American culture and religious practices. Because of the feathers' significance to Native American heritage . . . this Administration has undertaken policy and procedural changes to facilitate the collection and distribution of scarce eagle bodies and parts for this purpose." *Id.* On October 12, 2012, the United States Department of Justice released an updated Policy on Tribal Member Use of Eagle Feathers, which states that "[f]rom time immemorial, many Native Americans have viewed eagle feathers and other bird parts as sacred elements of their religious and cultural traditions ."[1]

Arizona law likewise provides protections from infringement of an individual's constitutionally guaranteed First Amendment rights to free exercise of religion. Ariz. Stat. tit. 41 § 1493 et seq. Regulations that tend to burden the free exercise of religion, whether directly or indirectly, necessitate a balancing of the individual's religious interests with the importance of the state's interests. *See id.* at 41 § 1493.01(C). Under Arizona law, "[g]overnment may substantially burden a person's exercise of religion **only** if it demonstrates that application of the burden to the person is both: 1. [i]n furtherance of a compelling governmental interest; and 2. [t]he least restrictive means of furthering that compelling governmental interest." *Id.* (emphasis added). Neither of these exceptions are applicable here. Concerns about uniformity or aesthetic purposes do not amount to a compelling governmental interest or serve as the least restrictive means as is evidenced by the fact that other local school districts, such as the Tucson Unified School District, permit students to wear these items.[2] We encourage the School District to adopt a similar policy so that Ms. Waln may exercise her religious rights consistent with Arizona law.

---

[1] http://www.justice.gov/opa/pr/2012/October/12-ag-1234.html.
[2] *See* https://tucson.com/news/local/tusd-to-allow-tribal-regalia-at-graduation-thanks-to-native/article_8c9a6660-594f-5efb-a4b9-905c0dd9160f.html

In applying the federal analogue to Arizona's religious freedom statute, the U.S. Supreme Court has made it clear that statutory protection of religious practice is expansive and that government interference with religious conduct is subject to the highest level of judicial scrutiny and will only be upheld for the most compelling reasons. *Holt v. Hobbs*, 135 S. Ct. 853, 860 (2015); *Burwell v. Hobby Lobby*, 134 S. Ct. 2751, 2761 (2014). Moreover, such religious freedom statutes apply to the person, and broadly formulated, generalized fears about what could happen if others are given similar accommodations are insufficient justification to interfere with the religious practice. *See Holt*, 135 S. Ct. at 863; *Hobby Lobby*, 134 S. Ct. at 2779 (quoting *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 430-31(2006)). The Valley Vista High School should be cognizant of this very recent, powerful Supreme Court precedent.

Other similar states, such as Oklahoma, have addressed this issue. The current Attorney General of Oklahoma, Mike Hunt, recently addressed the Oklahoma religious freedom statute as applied specifically to eagle feathers and Cherokee Nation beliefs and determined unequivocally that schools should not burden this fundamental religious practice. *See* Attachment A. The Oklahoma Attorney General states: "Based on my understanding of Cherokee spiritual practices, prohibiting students from wearing ceremonial eagle feathers on their graduation caps would substantially burden their free exercise of religion under [the Oklahoma Religious Freedom Act]." The Oklahoma Attorney General further determined that no compelling state interest (including "aesthetic uniformity" or a hypothetical "slippery slope") is served by a ban on sacred eagle feathers. He concludes that even if a compelling interest was present, a "complete ban" on eagle feathers is not essential, in part, because "other schools in the State and elsewhere permit the use of eagle feathers without any serious compromise to the order, seriousness, and celebration of a graduation ceremony."

Typically, an eagle feather is given only in times of great honor – for example, eagle feathers are given to mark great personal achievement. The gift of an eagle feather to a youth is a great honor and is typically given to recognize an important transition in his or her life. Many young people are given eagle feathers upon graduation from high school to signify achievement of this important educational journey and the honor the graduate brings to his or her family, community, and tribe. The Washington State Superintendent of Public Instruction, Randy Dorn, recently outlined the significance of eagle feathers in his letter calling upon all school districts to allow Native students to wear eagle feathers at graduation ceremonies. *See* Attachment B.

An eagle feather obviously has religious and spiritual significance to Native Americans, but what many people do not know is that in the graduation setting it is also a sign of academic success. Graduation from high school is an especially significant occasion for Native American students, considering that the Native American high school graduation rate is the lowest of any racial or ethnic group. Similarly, the poverty rate for American Indians under age 18 was 36.5% in 2012, as compared to 22.2% for the overall population.[3] Further, American Indian youth are more likely to suffer from

---

[3] Bureau of the Census, *Selected Population Profile in the United States: 2010-2012 American Community Survey 3-Year Estimates,* http://factfinder2.census.gov/bkmk/table/1.0/en/ACS/12_3YR/S0201/0100000US/popgroup~001|006.

addiction and substance abuse issues than the general population.[4] These modern challenges, combined with a history of cultural oppression and trauma, result in feelings of hopelessness for many Native American youth. Many Native students receive an eagle feather to recognize their academic success, great accomplishment of completing high school, and passage into adulthood. When an eagle feather is gifted, it is among the highest forms of recognition that may be bestowed upon a young person and can be seen as even more important than the high school diploma. Thus, graduation is a significant step in any Native American students' life, and the eagle feather honors and celebrates that academic achievement.

The beaded cap Ms. Waln wishes to wear carries similar significance. The practice of beading the cap both recognizes individual student success, and also highlights role models that inspire younger Native American students in their academic journey. The beaded cap for a high school graduate is a unique, culturally-rooted tradition for Native American families that communicates and symbolizes pride in the success of a young family member. Given the high population of Native American students in the Phoenix area, such recognition is crucially important for the entire Native American community and should be welcomed. Moreover, permitting select students to wear honor cords to show their academic success but denying Native American students from wearing their equivalent of an honor cord to demonstrate their academic success discriminates based on viewpoint.

In deciding how to press forward in this matter, we ask Valley Vista High School to remember that "in our society and in our culture high school graduation is one of life's most significant occasions." *Lee v. Weisman*, 505 U.S. 577, 595 (1992). "Graduation is a time for family and those closest to the student to celebrate success and express mutual wishes of gratitude and respect, all to the end of impressing upon the young person that role that it is his or her right and duty to assume in the community and all of its diverse parts." *Id.* In light of the significance that the eagle feather and traditional regalia has to Native American students, especially at graduation, we urge you to permit Ms. Waln to express her religious and spiritual beliefs by wearing her eagle feather and other traditional regalia on her cap or gown.

Thank you in advance for your consideration in this matter.

Sincerely,

Matthew L. Campbell
David Gover
Staff Attorneys
Native American Rights Fund

---

[4] Colorado State University, College of Natural Sciences, *Comparing Rates of Substance Use Among AI Students to National Rates: 2009-2012, available at* http://triethniccenter.colostate.edu/ai_epi1.htm.



MIKE HUNTER
ATTORNEY GENERAL

October 23, 2018

Vian Public Schools Board of Education
P.O. Box 434
Vian, OK 74962

Dear Members of the Vian School Board:

It has come to my attention that Cherokee tribal members who are students in your school are seeking to wear ceremonial eagle feathers on their graduation caps during their high school graduation. As chief law enforcement officer of this State, it is my duty both to protect the rights of Oklahoma citizens as provided for by law and to advise other governmental entities in the State on appropriate compliance with the law. It is my view that the Oklahoma Religious Freedom Act (ORFA) generally requires public schools to permit Cherokee students to engage in the spiritual practice of wearing eagle feathers to important events, such as graduations, even if this requires a religious exemption to an otherwise generally applicable rule. Accordingly, I urge the Board to adopt or revise its policies to permit these religious practices at graduation.

Under ORFA, no governmental entity may "substantially burden a person's free exercise of religion even if the burden results from a rule of general applicability" unless the government "demonstrates that application of the burden to the person is: (1) Essential to further a compelling governmental interest and; (2) The least restrictive means of furthering that compelling governmental interest." 51 O.S.2011 § 253.

The "exercise of religion" has been defined broadly, and need not form a central part of the person's faith, so long as it is a practice motivated by religion. *See* 51 O.S.2011 § 252(7); *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2762, 2770 (2014); *A.A. ex rel. Betenbaugh v. Needville Indep. Sch. Dist.*, 611 F.3d 248, 259-60 (5th Cir. 2010). Similarly, the term "substantially burden" has been broadly defined as any government regulation that will "inhibit or curtail religiously motivated practice," regardless of whether the religion absolutely requires the practice. 51 O.S.2011 § 252(7); *see also Holt v. Hobbs*, 135 S. Ct. 853, 862 (2015); *Barr v. City of Sinton*, 295 S.W.3d 287, 302 (Tex. 2009). Based on my understanding of Cherokee spiritual practices, prohibiting students from wearing ceremonial eagle feathers on their graduation caps would substantially burden their free exercise of religion under ORFA.

Thus, under the law, in order for the Board to prohibit such use of eagle feathers, it must be to further a "compelling" governmental interest and must be the "least restrictive means" of implementing that compelling interest. While context may dictate what is compelling, as a general matter, "compelling" interests are those of the highest order, meant to prevent the gravest of outcomes and to advance paramount state concerns. This likely does not include a mere desire for aesthetic uniformity or to avoid a hypothetical "slippery slope" if a religious exemption is granted. *See, e.g., Betenbaugh*, 611 F.3d at 271.

Prohibition of a religious practice must also be the least restrictive means of advancing that compelling interest, meaning that if alternative policies are available that meet compelling school needs *and* provide greater religious freedom, the school must choose those less restrictive alternatives. For example, permitting religious exemptions for adorning graduation caps (just as adornments signifying academic honors are often permitted) may still be part of a policy that would nonetheless prohibit other adornments that are distracting or offensive to the solemnity of the graduation ceremony. Good evidence that alternative policies are available include the fact that other schools in the State and elsewhere permit the use of eagle feathers without any serious compromise to the order, seriousness, and celebration of a graduation ceremony. For these reasons, I do not view a complete ban on eagle feathers as the only means essential to meeting the school's compelling needs.[1]

I hope this letter helps informs the Board's future decision making regarding the use of spiritual eagle feathers by Cherokee students during graduation ceremonies. I urge the Board to permit such use, consistent with the requirements of Oklahoma law. Please do not hesitate to contact my Office if you have any questions or concerns.

Thank you,

Mike Hunter
Attorney General of Oklahoma

---

[1] Although a federal court dismissed student claims for a right to wear an eagle feather in *Griffith v. Caney Valley Public Schools*, No. 4:15-cv-273 (N.D.O.K 2016), that Court did not address claims under ORFA and instead permitted such claims to be filed at a later date in state court.



# SUPERINTENDENT OF PUBLIC INSTRUCTION

**Randy I. Dorn**   Old Capitol Building · PO BOX 47200 · Olympia, WA 98504-7200 · http://www.k12.wa.us

January 29, 2016

Dear Colleagues,

Across the state, spring brings great excitement about commencement ceremonies. In preparation I want to take this opportunity to address a topic of great interest to our community—tribal students wearing items of cultural significance such as eagle feathers during graduation ceremonies.

During the last few decades, many, if not most, high schools have faced the issue of whether or not to permit Native students to wear eagle feathers during graduation ceremonies. Given the tribal reverence for eagles and the high honor represented by graduation, most schools recognize that commencement ceremonies are an appropriate setting for Native students to wear an eagle feather with dignity. These schools recognize that allowing Native students to wear eagle feathers is not only good policy, but also the right thing to do.

Since time immemorial, many tribal nations have viewed eagles and their feathers as sacred elements of their cultural traditions. As a part of those traditions, eagle feathers may represent honesty, truth, strength, courage, and wisdom. As such, eagle feathers are given only in times of great honor. Many tribes present their young people with eagle feathers upon graduation from high school to signify the achievement of this important educational journey and the honor the graduate brings to his or her family, community, and tribal nation. For many Native students, receiving an eagle feather in recognition of graduation is as significant as earning the diploma or akin to an honor society stole.

Some districts have adopted policies allowing Native graduates to have this distinct honor. These policies range from specifically accommodating Native students, to permitting student organizations that represent certain cultural groups to approve and/or distribute eagle feathers for Native students. However, on occasion whether or not to permit Native students to wear an eagle feather during graduation still becomes an issue, usually because many school districts have strict dress codes about attire for commencement ceremonies so as to avoid any disruption to the ceremony.

In my experience assisting school district staff resolving matters relating to Native students wearing eagle feathers during graduation ceremonies, I observe that we often came to the realization that the eagle feather is a symbol of such high honor in the tribal community, it should not be viewed as a violation of the graduation ceremony dress codes.

**Attachment B**

Federally recognized tribes Washington state operate as sovereign nations. The Office of Superintendent of Public Instruction (OSPI) is committed to fostering the vital government-to-government relationships with tribes. OSPI fully supports policies that recognize the tribal student's ability to honor unique tribal cultures. I am calling on school districts to review current policies and search for inclusive ways Native students can honor their tribal traditions.

Thank you for supporting our state's efforts to ensure educational equity and to foster inclusive educational activities for all students and communities.

Sincerely,

Randy I. Dorn
State Superintendent
of Public Instruction

# Exhibit 2



GUST
ROSENFELD
ATTORNEYS SINCE 1921 P.L.C.

■ ONE E. WASHINGTON, SUITE 1600 ■ PHOENIX, ARIZONA 85004-2553 ■ TELEPHONE 602-257-7422 ■ FACSIMILE 602-254-4878 ■

JENNIFER N. MACLENNAN
602-257-7475
FAX: 602-340-1538
maclennan@gustlaw.com

May 15, 2019

Via E-mail and U.S. Mail

Matthew L. Campbell
David Gover
Staff Attorneys
Native American Rights Fund
1506 Broadway, Boulder, Colorado 80302-6296
mcampbell@narf.org
dgover@narf.org

Re: *Graduation at Valley Vista High School on Macy 16, 2019*

Dear Mr. Campbell and Mr. Gover:

This law firm represents the Dysart Unified School District No. 89 ("District"). The District has reviewed your letter dated May 13, 2019 and provides the following response after consideration of the concerns raised on behalf of student LaRissa Waln. Please note that because you have not indicated that you represent Ms. Waln or her family, this letter is being sent under separate cover to the student's family.

On Thursday, May 16, 2019, the District will host commencement ceremonies for Valley Vista High School at State Farm Stadium. The District holds commencement exercises to honor the achievements of students who have met state and local requirements for graduation from high school. Dysart Governing Board Policy 9.41, Tab 1. A student's participation in commencement is encouraged but not required to receive a high school diploma.

The District's commencement dress code requires all students to wear a cap and gown with tassel without adornment or alteration while participating in the commencement exercises. The reason for this requirement is to preserve the sanctity of the ceremony for graduating students and their families and honor the achievements of all students. In addition, the commencement dress code is intended to show respect for the formality of the ceremony, unity for the graduating Class of 2019, and to avoid disruption of the commencement ceremonies that

is likely to occur if students are allowed to alter their graduation cap or gown. This commencement dress code is neutral and applied generally to all graduating students.

Your letter dated May 13, 2019 requests that the District honor the student's First Amendment right to free exercise of religion and Arizona's religious freedom statute by permitting the student adorn her commencement cap with beads and wear an eagle feather during the ceremony. The District denies that request.

The First Amendment rights of students in public schools are "applied in light of the special characteristics of the school environment." Tinker v. Des Moines Independent Community School Dist., 393 U.S. 503, 506 (1969). School facilities are only public forums with unfettered First Amendment rights if school authorities have opened those facilities by policy or practice for indiscriminate use by the general public. Id. Where no public forum is created, school officials may impose reasonable restrictions on the speech of students because it is school-sponsored speech. See Hazelwood School District v. Kuhlmeier, 108 S.Ct. 562 (1988); Perry Education Assn. v. Perry Local Educators' Assn., 460 U.S. 37, 47 (1983). The commencement ceremony for Valley Vista High School is a limited public forum and the District may impose reasonable restrictions on the speech of students participating in commencement.

The District has imposed a reasonable restriction on student speech through its commencement dress code to preserve the sanctity and formality of the commencement ceremony. This restriction was communicated in a timely manner to Valley Vista parents and guardians on or about April 25, 2019. Tab 2. The commencement dress code is reasonably related to pedagogical concern to avoid controversy that may arise if each student was allowed to adorn or alter his or her graduation attire with religious, cultural or familial emblems or symbols.

The District has worked with any family when issues have arisen related to the commencement dress code to find a workable solution consistent with the commencement dress code. For example, the District has worked with families to allow students to wear attire underneath their gown that honors or expresses something important to the student, such as military membership or a student's heritage.

You have requested that the student be permitted to wear an eagle feather and beaded cap during the graduation ceremony to honor her Native American heritage. The District recognizes the important religious aspects of eagle feathers to Native Americans. Accordingly, the District will permit a student to wear an eagle feather in his or her hair, as a necklace or as other jewelry. No student will be permitted to participate in the commencement ceremony with an adorned or altered commencement cap.

The District agrees that high school graduation is a significant occasion and hopes that the student will participate in commencement on Thursday, May 16, 2019 as outlined above to celebrate her achievements.

Very truly yours,

Jennifer N. MacLennan
For the Firm

3517202.3
Enclosures
cc:    Dr. Quinn Kellis, Superintendent
       Family of LaRissa Waln
              (via email – bwaln007@gmail.com
              and levettewaln1@gmail.com)

# Tab 1



| | |
|---|---|
| Book | Governing Board Policies |
| Section | Section 9 - Instruction |
| Title | Graduation Exercises |
| Code | 9.41 |
| Status | Active |
| Adopted | August 19, 2015 |

**Commencement Exercises**

Commencement exercises will be held for students who have met state and local requirements for graduation from high school.

Participation in high school commencement exercises is encouraged but is not compulsory. However, since these exercises require planning and rehearsals, the following rules shall apply:

- Students who wish to participate must be present at the rehearsals. Failure to do so, except for legitimate reasons for absence, may be cause for excluding students from participating in the exercises.

- Students may not participate in the commencement exercises unless they have successfully completed the requirements for graduation.

- Awards to seniors will be printed on the commencement program and announced at the exercises only in cases where the recipients have been selected solely by the school.

- Other awards to graduating seniors selected by persons or organizations outside the school may be presented at the final awards assembly if approved by the principal.

# Tab 2



**VALLEY VISTA**
HIGH SCHOOL

April 25, 2019

Dear Parents/Guardians:

Congratulations to the Class of 2019! Spring is an exciting time and our students have been working diligently to complete their classes. The Class of 2019 is looking forward to attending universities, community colleges, military experiences, and/or work force opportunities.

A few reminders regarding graduation:

· There will be a senior parent meeting Thursday, May 9, 2019, at 6:00p.m. in the Lecture Hall. All parents, guardians and students are invited to attend to go over final details regarding graduation.

· The 2019 Graduation Ceremony will be on Thursday, May 16, 2019, at 3:30 p.m. at State Farm Stadium, 1 Cardinals Drive Glendale, AZ 85305. _Students are required to be at the stadium by 2:15 p.m. and enter through Gate 2. Gate 3 will be open at approximately 2:30 p.m. for parents and guests. Parking is in the Green/Gray lot. Tickets are not required to attend the ceremony._

Appropriate dress is required for graduation.
o Male graduates: Shirt and tie, polo shirt, dress slacks, khakis, dress shoes (athletic shoes or sandals/flip flops and jeans are not allowed.)
o Female graduates: Dress, dress pants, blouse, dress shoes (athletic shoes, flip flops and jeans are not allowed. Spiked heels are not recommended for safety reasons.)
o A school medallion and school approved honor cords and stoles may be worn over gown, no other adornment/additions are allowed.
o Students may NOT decorate their gown or cap.

· Graduates are not to bring or carry anything during graduation (cell phones, cameras or purses, etc.) They should leave all of this with a parent or other guest.

· State Farm Stadium does not allow signs bigger than 2' x 3', air horns, balloons or tripods to be brought inside.

Graduation line-up practice will take place on Monday, May 13 at 10:00 a.m. in the PAC. **ALL graduates are required to be at practice in order to be in the graduation ceremony on May 16, 2019.**

$\Longrightarrow$ OVER

Following graduation practice, seniors will participate in a parade through campus in their cap and gowns.

·    All books need to be returned by the end of business day on May 9ᵗʰ at 2:00 p.m. If you have any questions, please contact Rona Damon, the Bookstore Manager at (623) 523-8846.

·    Graduation is a formal celebration; appropriate behavior is expected at all times. Students displaying inappropriate behavior at any time (before or after graduation practice or ceremony) will be removed.

Again, graduation is an exciting time. The faculty, staff, administration and the Governing Board of Dysart Unified School District are proud of the achievements of our students and your children. We look forward to honoring the Class of 2019 with you.

Sincerely,

Roberta "Bobbie" Lockhart

# Exhibit 3

May 15, 2019

**Via Email**

Quinn R. Kellis, Superintendent
Dysart Unified School District
15802 North Parkview Place
Surprise, AZ 85374
super@dysart.org

Christine A.K. Pritchard, President
District Governing Board
christine.pritchard@dysart.org



P.O. Box 17148
Phoenix AZ 85011
(602) 650-1854
acluaz.org

Dale Baich
*President*

Alessandra Soler
*Executive Director*

Kathy Brody
*Legal Director*

*Re: Native American Religious Dress Accommodation*

Dear Dr. Kellis and Ms. Pritchard:

We have been contacted by LaRissa Waln, a senior at Valley Vista High School, regarding the school's unlawful refusal to accommodate her religious beliefs and practice during this Thursday's graduation ceremony. In accordance with her Native American faith, Ms. Waln—an enrolled member of the Sisseton-Wahpeton Sioux Tribe—seeks to wear beadwork and an eagle feather on her graduation cap. Under Arizona's Free Exercise of Religion Act (FERA), A.R.S. § 41-1493 *et seq.*, the school may not deny Ms. Waln's requested accommodation. She must be permitted to wear these religiously significant items on her graduation cap.

As you may know, eagle feathers are of the utmost significance to Native American religious practice. According to Native American religious tradition, eagles have a special connection with God and carry peoples' prayers to the heavens. Many Native Americans thus believe that bald and golden eagle feathers are sacred religious objects representing honesty, truth, majesty, strength, courage, wisdom, power, and freedom. *See, e.g.*, Press Release on Policy on Tribal Member Use of Eagle Feathers, Department of Justice (October 12, 2012), https://www.justice.gov/opa/pr/justice-department-announces-policy-tribal-member-use-eagle-feathers. ("From time immemorial, many Native Americans have viewed eagle feathers and other bird parts as sacred elements of their religious and cultural traditions."). In fact, many "Native Americans hold eagle feathers sacred and equate them to the cross or the Bible" in Christianity. *Environmental Protection v. Native American Free Exercise of Religion*, 22 Hastings Const. L.Q. 771, 774-75 (1995).

Consistent with these religious beliefs, an eagle feather is typically gifted to a young Native American person at a time of great honor and personal achievement. So too, the beadwork prepared by Ms. Waln's father for her graduation cap has important religious meaning: It signifies and honors the spiritual role that family plays in the graduate's success. These religious items are especially important for many Native Americans in ceremonial contexts like a graduation, and Ms. Waln has a sincere religious belief that wearing these sacred religious symbols on her graduation cap is necessary to recognize and express thanks for God's blessing over her achievement.



Arizona's FERA provides heightened protections for the very type of religious exercise in which Ms. Waln seeks to engage here. The law prohibits the government, including school districts, from imposing a substantial burden on an individual's religious exercise unless the government can demonstrate that this burden is (1) "in furtherance of a compelling governmental interest" and (2) "the least restrictive means of furthering that compelling governmental interest." A.R.S. § 41-1493.01(C).[1]

As explained above, Ms. Waln's religious beliefs regarding the wear of an eagle feather and beadwork on her graduation cap are sincerely held. Denying her the ability to abide by her faith while participating in her graduation ceremony would substantially burden her religious exercise.[2]

Thus, under each prong of the legal analysis mandated by the FERA, school officials must meet a heavy burden to justify denying Ms. Waln's requested religious accommodation. Dysart has failed to do so here. There is simply no *compelling* governmental interest in prohibiting her from exercising her Native American faith in this context. The proposed accommodation would merely permit Ms. Waln to take part in a passive, quiet religious observance. It would pose no harm to anyone else; nor

---

[1] FERA "parallels" the federal Religious Freedom Restoration Act, making federal case law instructive on its application. *See State v. Hardesty*, 222 Ariz. 363, 365, 214 P.3d 1004, 1006 (2009).

[2] We understand that school officials have stated that Ms. Waln may instead place the feather in her hair, hold the feather, or pin it to her dress. However, these alternatives do not comport with Ms. Waln's religious beliefs, which instruct that the feather and beadwork must be placed above the head and cannot be covered by the cap, for doing so would desecrate these objects.

would it cause disruption or otherwise impede the progress of the graduation ceremony.

Moreover, even if school officials could demonstrate a compelling interest in prohibiting Ms. Waln from attaching religiously significant items to her graduation cap, the fact that other schools—including some in Arizona—have permitted Native American students to wear these items at graduation makes clear that denying Ms. Waln's proposed religious accommodation would not be the least restrictive means of furthering a compelling governmental interest. *See, e.g.*, Brenna Bailey, *TUSD to allow tribal regalia at graduation*, Arizona Daily Star (Mar. 28, 2019); *Holt v. Hobbs*, 135 S. Ct. 853, 866 (2015) (holding, under same legal standard mandated by the FERA, that prison's denial of religious accommodation for beard was not the "least restrictive means" of achieving a compelling interest where "many other prisons allow inmates to grow beards while ensuring prison safety and security").



Unfortunately, in a meeting yesterday with Ms. Waln's father, Dr. Kellis demonstrated that he simply does not understand the law that governs Ms. Waln's request. Justifying the District's denial of a religious accommodation here, Dr. Kellis pointed to a 2016 judicial decision in Oklahoma. But in that case, the court's analysis was based on the Free Speech Clause and Free Exercise Clause of the First Amendment, under which the analysis applied to school officials is different and more deferential to schools than the legal standard applied under Arizona's FERA. *See generally Griffith v. Caney Valley Public Schools*, 157 F.Supp.3d 1159, 1164-65 (N.D. Okla. 2016) (considering only whether "the school's current dress policy is reasonably related to a legitimate pedagogical concern" and whether "the policy lacks a rational basis").

As explained above, the legal standard applied to schools under Arizona's FERA—strict scrutiny—provides heightened protection for religious exercise and is much more exacting than the analysis applied by the court in *Griffith*. Indeed, using the same legal standard set forth in FERA, courts have already required religious exemptions to mandatory dress code or appearance policies. Under this legal standard, for example, courts have required a public school to allow a Native American student to maintain his long hair in accordance with his religious beliefs, *A.A. ex rel. Betenbaugh v. Needville Indep. Sch. Dist.*, 611 F.3d 248 (5th Cir. 2010), a prison to permit a Muslim prisoner to grow a beard in accordance with his religious beliefs, *Holt v. Hobbs*, 135 S. Ct. 853 (2015), and the U.S. Army to authorize a Sikh ROTC cadet to wear a turban, beard, and unshorn hair. *Singh v. McHugh*, 109 F. Supp. 3d 72 (D.D.C. 2015). In each of these cases, the courts found that the

government could not meet the heavy burden for denying a religious exemption under the strict-scrutiny test.

During yesterday's meeting, Dr. Kellis also complained that other students might seek religious exemptions or accommodations if Ms. Waln's accommodation is granted. Dr. Kellis's reasoning further demonstrates a gross ignorance of the applicable law here. This "slippery slope" argument has repeatedly been rejected by courts that have applied the same legal standard set forth in FERA. *See, e.g.*, *Yellowbear v. Lampert*, 741 F.3d 48, 62 (10th Cir. 2014) (holding that prison failed to show that denying a Native American prisoner access to a sweat lodge was the least restrictive means of accomplishing a compelling governmental interest and rejecting "slippery slope" argument because "the law requires considerably more than milquetoast musing that granting one request might lead to others").

No student should have to choose between exercising her faith and attending her graduation ceremony. We respectfully request that you immediately allow Ms. Waln to participate in graduation while wearing her eagle feather and beadwork on her graduation cap, as required under Arizona's religious-freedom law. Thank you for your prompt attention to this matter and please do not hesitate to contact us if you have any questions.

Sincerely,

Amanda Parris
ACLU of Arizona
P.O. Box 17148
Phoenix, AZ 85011
(602) 773-6003
aparris@acluaz.org

Daniel Mach
Heather L. Weaver
Aleksandr Sverdlik
ACLU Program on Freedom of Religion and Belief
915 15th Street NW, Suite 600
Washington, DC 20002
(202) 675-2330
dmach@aclu.org
hweaver@aclu.org
asverdlik@aclu.org

**CC via Email:**
Jennifer N. MacLennan
Gust Rosenfeld P.L.C.
maclennan@gustlaw.com

# Exhibit 4



■ ONE E. WASHINGTON, SUITE 1600 ■ PHOENIX, ARIZONA 85004-2553 ■ TELEPHONE 602-257-7422 ■ FACSIMILE 602-254-4878 ■

JENNIFER N. MACLENNAN
602-257-7475
FAX: 602-340-1538
maclennan@gustlaw.com

May 15, 2019

Via E-mail and U.S. Mail

Amanda Parris
ACLU of Arizona
P.O. Box 17148
Phoenix, AZ 85011
aparris@acluaz.org

Re:    *Graduation at Valley Vista High School on May 16, 2019*

Dear Ms. Parris:

This law firm represents the Dysart Unified School District No. 89 ("District"). The District has reviewed your letter dated May 15, 2019 and provides the following response after consideration of the concerns raised on behalf of student LaRissa Waln. Please note that because you have not indicated that you represent Ms. Waln or her family, this letter is being sent under separate cover to the student's family.

On Thursday, May 16, 2019, the District will host commencement ceremonies for Valley Vista High School at State Farm Stadium. The District holds commencement exercises to honor the academic achievements of students who have met state and local requirements for graduation from high school. Dysart Governing Board Policy 9.41, Tab 1. A student's participation in commencement is encouraged but not required to receive a high school diploma.

The District's commencement dress code requires all students to wear a cap and gown with tassel without adornment or alteration while participating in the commencement exercises. The reason for this requirement is to preserve the sanctity of the ceremony for graduating students and their families and honor the academic achievements of all students. In addition, the commencement dress code is intended to show respect for the formality of the ceremony, unity for the graduating Class of 2019, and to avoid disruption of the commencement ceremonies that is likely to occur if students are allowed to alter their graduation cap or gown. This commencement dress code is neutral and applied generally to all graduating students. For

instance, the District has also denied a request that seminary students be allowed to wear a special adornment on their gown during the graduation ceremony.

Your letter dated May 15, 2019 requests that the District honor the student's ability to adorn her commencement cap with beads and wear an eagle feather during the ceremony. The District denies that request.

You have indicated that in your opinion, the District's content neutral and neutrally applied regulation pertaining to the commencement dress code must be subject to strict scrutiny to meet a compelling state interest. The District disagrees.

> Public employers enjoy somewhat more leeway, but not carte blanche, in regulating the speech and other First Amendment activities of their employees. "Heightened" or "intermediate" level scrutiny generally applies in the public sector, "under which the challenged government action must be substantially related (rather than narrowly tailored) to promoting an important (rather than compelling) government interest ... because First Amendment rights are limited in the public employment context by a government's need to function efficiently."

*Nichol v. ARIN Intermediate Unit 28*, 268 F. Supp. 2nd 536, 550 (W.D. Penn 2003) (citing *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144, 157 , 167 n.2 (3d Cir.2002)).

The District has imposed a reasonable restriction on student speech through its commencement dress code to preserve the sanctity and formality of the commencement ceremony. This restriction was communicated in a timely manner to Valley Vista parents and guardians on or about April 25, 2019. Tab 2. The commencement dress code is reasonably related to an important pedagogical concern.

The District has worked with any family when issues have arisen related to the commencement dress code to find a workable solution consistent with the commencement dress code. For example, the District has worked with families to allow students to wear attire underneath their gown that honors or expresses something important to the student, such as military membership or a student's heritage.

You have requested that the student be permitted to wear an eagle feather and beaded cap during the graduation ceremony to honor her Native American heritage. The District recognizes the important religious aspects of eagle feathers to Native Americans. Accordingly, the District will permit a student to wear an eagle feather in his or her hair, as a necklace or as other jewelry. This will allow her to participate in the exercise of her religious symbolic speech at the graduation. No student will be permitted to participate in the commencement ceremony with an adorned or altered commencement cap.

The District agrees that high school graduation is a significant occasion and hopes that the student will participate in commencement on Thursday, May 16, 2019 as outlined above to celebrate her academic achievements.

Very truly yours,

Jennifer N. MacLennan
For the Firm

3518605.2
Enclosures
cc:     Dr. Quinn Kellis, Superintendent
        Family of LaRissa Waln
             (via email – bwaln007@gmail.com
             and levettewaln1@gmail.com)

# Tab 1



| Book | Governing Board Policies |
|---|---|
| Section | Section 9 - Instruction |
| Title | Graduation Exercises |
| Code | 9.41 |
| Status | Active |
| Adopted | August 19, 2015 |

**Commencement Exercises**

Commencement exercises will be held for students who have met state and local requirements for graduation from high school.

Participation in high school commencement exercises is encouraged but is not compulsory. However, since these exercises require planning and rehearsals, the following rules shall apply:

- Students who wish to participate must be present at the rehearsals. Failure to do so, except for legitimate reasons for absence, may be cause for excluding students from participating in the exercises.

- Students may not participate in the commencement exercises unless they have successfully completed the requirements for graduation.

- Awards to seniors will be printed on the commencement program and announced at the exercises only in cases where the recipients have been selected solely by the school.

- Other awards to graduating seniors selected by persons or organizations outside the school may be presented at the final awards assembly if approved by the principal.

# Tab 2



**VALLEY VISTA**
HIGH SCHOOL

April 25, 2019

Dear Parents/Guardians:

Congratulations to the Class of 2019! Spring is an exciting time and our students have been working diligently to complete their classes. The Class of 2019 is looking forward to attending universities, community colleges, military experiences, and/or work force opportunities.

A few reminders regarding graduation:

·   There will be a senior parent meeting Thursday, May 9, 2019, at 6:00p.m. in the Lecture Hall.  All parents, guardians and students are invited to attend to go over final details regarding graduation.

·   The 2019 Graduation Ceremony will be on Thursday, May 16, 2019, at 3:30 p.m. at State Farm Stadium, 1 Cardinals Drive Glendale, AZ 85305. _Students are required to be at the stadium by 2:15 p.m. and enter through Gate 2.  Gate 3 will be open at approximately 2:30 p.m. for parents and guests.  Parking is in the Green/Gray lot. Tickets are not required to attend the ceremony._

Appropriate dress is required for graduation.
o Male graduates: Shirt and tie, polo shirt, dress slacks, khakis, dress shoes (athletic shoes or sandals/flip flops and jeans are not allowed.)
o Female graduates:  Dress, dress pants, blouse, dress shoes (athletic shoes, flip flops and jeans are not allowed.  Spiked heels are not recommended for safety reasons.)
o A school medallion and school approved honor cords and stoles may be worn over gown, no other adornment/additions are allowed.
o Students may NOT decorate their gown or cap.

·   Graduates are not to bring or carry anything during graduation (cell phones, cameras or purses, etc.) They should leave all of this with a parent or other guest.

·   State Farm Stadium does not allow signs bigger than 2' x 3', air horns, balloons or tripods to be brought inside.

Graduation line-up practice will take place on Monday, May 13 at 10:00 a.m. in the PAC. ALL graduates are required to be at practice in order to be in the graduation ceremony on May 16, 2019.

⟹ OVER

Following graduation practice, seniors will participate in a parade through campus in their cap and gowns.

· All books need to be returned by the end of business day on May 9th at 2:00 p.m. If you have any questions, please contact Rona Damon, the Bookstore Manager at (623) 523-8846.

· Graduation is a formal celebration; appropriate behavior is expected at all times. Students displaying inappropriate behavior at any time (before or after graduation practice or ceremony) will be removed.

Again, graduation is an exciting time. The faculty, staff, administration and the Governing Board of Dysart Unified School District are proud of the achievements of our students and your children. We look forward to honoring the Class of 2019 with you.

Sincerely,

Roberta "Bobbie" Lockhart

# Exhibit 5

May 15, 2019

**Via Email**

Jennifer N. MacLennan
Gust Rosenfeld P.L.C.
maclennan@gustlaw.com



P.O. Box 17148
Phoenix AZ 85011
(602) 650-1854
acluaz.org

Dale Baich
*President*

Alessandra Soler
*Executive Director*

Kathy Brody
*Legal Director*

*Re: Native American Religious Dress Accommodation*

Dear Ms. MacLennan:

Thank you for your letter. However, the case law you cite governing public employees' speech rights is completely irrelevant to Ms. Waln's request for religious accommodation. This matter pertains to the religious-freedom rights of a student, not the free-speech rights of public employees. Even if the District claims it is not violating the First Amendment of the U.S. Constitution, it must also show that its conduct complies with the Arizona FERA. Instead, your letter simply ignores this state religious-freedom statute.

The strict scrutiny standard mandated by Arizona's Free Exercise of Religion Act, A.R.S. § 41-1493 et seq., applies even where a rule or policy is neutral and generally applicable to all. Indeed, that is the whole point of laws like FERA and the federal RFRA: They are intended to ensure that individuals may obtain religious exemptions from neutral, generally applicable rules and policies except in the most extreme and urgent circumstances—where the government's denial of a religious accommodation can survive strict scrutiny. That is why, as we noted in our letter, courts applying a strict-scrutiny analysis identical to the one mandated by the FERA have required governmental entities to provide religious exemptions from a variety of neutral, generally applicable appearance and dress policies.

Your letter did not respond to, or even acknowledge the existence of, the applicable statute at issue here, the Arizona FERA. Moreover, your letter demonstrates an intolerable disrespect for Native American religious practices. Ms. Waln is not seeking merely to display cultural or familial emblems, as you suggest. She is seeking to engage in a religious practice—one that happens to be observed by many Native Americans. That religious practice is passive and unobtrusive and can in no way be characterized as a "disruption."

As explained in our initial letter, the denial of a religious exemption here does not meet the exacting legal standard that is mandated by the FERA. Your misunderstanding of the law could cost your clients tens of thousands of dollars in attorneys' fees should they be sued over this or a related matter, as they almost certainly would lose any lawsuit asserting a claim under the FERA.

We urge you to reconsider granting Ms. Waln a religious accommodation. She is entitled to her Native American religious tradition just as other people of faith are entitled to their religious beliefs under Arizona law. Should you fail to do so, please consider this letter a notice that your clients should preserve all documents (electronic and otherwise) and other materials or evidence relating to this matter for any future legal or investigative action that may occur.



Sincerely,

Amanda Parris
ACLU of Arizona
P.O. Box 17148
Phoenix, AZ 85011
(602) 650-1854
aparris@acluaz.org

Daniel Mach
Heather L. Weaver
Aleksandr Sverdlik
ACLU Program on Freedom of Religion and Belief
915 15th Street NW, Suite 600
Washington, DC 20002
(202) 675-2330
dmach@aclu.org
hweaver@aclu.org
asverdlik@aclu.org

**CC via Email:**

Quinn R. Kellis, Superintendent
Dysart Unified School District
15802 North Parkview Place
Surprise, AZ 85374
super@dysart.org

Christine A.K. Pritchard, President
District Governing Board
christine.pritchard@dysart.org