1   April E. Olson (AZ #025281)
    Glennas'ba Augborne (AZ#033702)
2   **ROTHSTEIN DONATELLI LLP**
    1501 W. Fountainhead Parkway, Suite #360
3   Tempe, Arizona 85282
    Telephone: (480) 921-9296
4   aeolson@rothsteinlaw.com
    gaugborne@rothsteinlaw.com
5
    Carolyn M. "Cammie" Nichols (*Pro Hac Vice*)
6   Alicia C. Lopez (*Pro Hac Vice*)
    **ROTHSTEIN DONATELLI LLP**
7   500 4th Street, NW, Suite #400
    Albuquerque, New Mexico 87102
8   Telephone: (505) 243-1443
    cmnichols@rothsteinlaw.com
9   alopez@rothsteinlaw.com
10  Matthew Campbell (*Pro Hac Vice*)
    David Gover (*Pro Hac Vice*)
11  **NATIVE AMERICAN RIGHTS FUND**
    1506 Broadway
12  Boulder, Colorado 80302
    Telephone: (303) 447-8760
13  mcampbell@narf.org
    dgover@narf.org
14
    *Attorneys for Plaintiffs Larissa Waln and Bryan Waln*
15
16            **IN THE UNITED STATES DISTRICT COURT**
                    **FOR THE DISTRICT OF ARIZONA**
17

18

19   Larissa Waln and Bryan Waln,          Case No. 20-cv-799-PHX-CDB

20                    Plaintiffs,

21   v.                                     **PLAINTIFFS LARISSA WALN
                                            AND BRYAN WALN'S RESPONSE
22   Dysart School District; *et al.*,      TO DEFENDANTS' MOTION TO
                                            DISMISS**
23                    Defendants.

24                                          **Oral Argument Requested**

25

26

27

28

# **Table of Contents**

Table of Authorities.................................................................................................ii

I.  Introduction ............................................................................................. 1

II.  Memorandum and Points of Authorities ................................................... 1

    A.  Factual Allegations .......................................................................... 1

    B.  Response to Defendants' Background Allegations ............................... 4

    C.  Legal Standard for a Motion to Dismiss ............................................. 5

    D.  Bryan Waln Has Standing................................................................. 5

    E.  The Governing Board Members Do Not Have Legislative Immunity ................ 6

    F.  The Governing Board and Individual Defendants are Properly Named as Defendants ..................................................................................... 8

    G.  Plaintiffs Have Adequately Alleged Their Section 1983 Claims ......................... 9

    H.  Defendants Lack Qualified Immunity .............................................. 10

        1.  Larissa's Free Exercise Rights Are Clearly Established ............................. 11

        2.  Larissa's Free Speech Rights Are Clearly Established.................................. 13

        3.  Larissa's Equal Protection Rights Are Clearly Established.......................... 14

    I.  Plaintiffs Have Adequately Alleged a Free Speech Violation............................. 14

    J.  Plaintiffs Have Adequately Alleged a Free Exercise Violation ........................ 19

    K.  Plaintiffs Are Not Asserting a "Class of One" Equal Protection Claim.............. 23

    L.  Plaintiffs' Notice of Claim Satisfied Arizona Law.............................................. 24

    M.  Plaintiffs May Seek Punitive Damages and Declaratory Relief........................ 26

III.  Conclusion................................................................................................27

i

# <u>Table of Authorities</u>

## Federal Cases

*Al Saud v. Lamb*,
No. CV 18-04890-PHX-SPL-JFM, 2020 WL 1904619 at *6
(D. Ariz. Apr. 17, 2020) ........................................................................... 20

*Anderson v. Creighton*,
483 U.S. 635 (1987) ................................................................................. 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................... 5

*Bechard v. Rappold*,
287 F.3d 827 (9th Cir. 2002) ..................................................................... 7

*Buono v. Norton*,
371 F.3d 543 (9th Cir. 2004) ..................................................................... 5

*Burwell v. Hobby Lobby Stores, Inc.*,
573 U.S. 682 (2014) ................................................................................. 20

*C.F. ex rel. Farnan v. Capistrano Unified School Dist.*,
654 F.3d 975 (9th Cir. 2011) ................................................................... 11

*C.R. v. Eugene Sch. Dist. 4J*,
835 F.3d 1142 (9th Cir. 2016) ................................................................... 9

*Cmty. House, Inc. v. City of Boise, Idaho*,
623 F.3d 945 (9th Cir. 2010) ..................................................................... 6

*Cole v. Oroville Union High Sch. Dist.*,
228 F.3d 1092 (9th Cir. 2000) ........................................................... 14, 22

*Dariano v. Morgan Hill Unified Sch. Dist.*,
767 F.3d 764 (9th Cir. 2014) ................................................................... 16

*Dreaming Bear v. Fleming*,
714 F. Supp. 2d 972 (D.S.D. 2010) .............................................. 12, 14, 15, 18

*Frudden v. Pilling*,
742 F.3d 1199 (9th Cir. 2014) ...................................................... 5, 13, 16

*Galen v. Cty. of L.A.*,
477 F.3d 652 (9th Cir. 2007) ..................................................................... 9

*Griffith v. Caney Valley Pub. Sch.*,
157 F. Supp. 3d 1159 (N.D. Okla. 2016) ........................... 12, 14, 15, 17, 18

*Hazelwood Sch. Dist. v. Kuhlmeier*,
484 U.S. 260 (1988) ................................................... 15, 16, 17, 18

*Isaacson v. Horne*,
716 F.3d 1213 (9th Cir. 2013) ................................................................. 15

*Jacobs v. Clark Cty. Sch. Dist.*,
  526 F.3d 419 (9th Cir. 2008) ............................................................... 15, 16, 17, 18

*Jama v. United States INS*,
  343 F. Supp. 2d 338 (D.N.J. 2004) ............................................................. 20

*Lassonde v. Pleasanton Unified Sch. Dist.*,
  320 F.3d 979 (9th Cir. 2003) .............................................. 13, 18, 21, 22

*Lee v. Weisman*,
  505 U.S. 577 (1992) ....................................................................................... 22

*Lepp v. Gonzales*,
  No. C-05-0566, 2005 WL 1867723 (N.D. Cal. Aug. 2, 2005) ............................ 20

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ......................................................................................... 5

*Mack v. Warden Loretto FCI*,
  839 F.3d 286 (3d Cir. 2016) ........................................................................... 20

*Milke v. City of Phoenix*,
  No. CV-15-00462-PHX-ROS, 2016 WL 5346364 at *4
  (D. Ariz. July 6, 2016) .................................................................................... 11

*Moss v. Spartanburg Cty. Sch. Dist. Seven*,
  683 F.3d 599 (4th Cir. 2012) ............................................................................ 6

*Mullenix v. Luna*,
  136 S. Ct. 305 (2015) ...................................................................................... 11

*Navajo Nation v. U.S. Forest Serv.*,
  535 F.3d 1058 (9th Cir. 2008) ........................................................................ 21

*New Orleans v. Dukes*,
  427 U.S. 297 (1976) ........................................................................................ 23

*Nurre v. Whitehead*,
  580 F.3d 1087 (9th Cir. 2009) ........................................................................ 23

*Our Peculiar Family v. Inspire Charter Sch.*,
  No. 2:20-CV-00331-ODW-JCX, 2020 WL 3440562
  (C.D. Cal. June 23, 2020) .......................................................................... 12, 14

*Ryan v. Mesa Unified Sch. Dist.*,
  64 F. Supp. 3d 1356 (D. Ariz. 2014) ........................................................... 10, 11

*Sanches v. City of Crescent City*, N
  No. C-08-1395-MEJ, 2009 WL 650247 (N.D. Cal. Mar. 10, 2009) ...................... 7

*Sherbert v. Verner*,
  374 U.S. 398 (1963) ........................................................................................ 21

*Smith v. Wade*,
  461 U.S. 30 (1983) .......................................................................................... 27

iii

*Steadfast Ins. Co. v. Nat'l Fire & Marine Ins. Co.*,
　　No. CIV. 13-00724-PHX-PG, 2013 WL 6709956 (D. Ariz. Dec. 19, 2013) .......... 5

*Syed v. M-I, LLC*,
　　853 F.3d 492 (9th Cir. 2017) ................................................................. 5

*T.A. v. McSwain Union Elementary Sch.*,
　　No. 1:08-CV-01986, 2010 WL 2803658 (E.D. Cal. July 16, 2010) .................... 16

*Tanvir v. Tanzin*,
　　894 F.3d 449 (2d Cir. 2018) .................................................................. 20

*Williams v. Alhambra Sch. Dist. No. 68*,
　　234 F. Supp. 3d 971 (D. Ariz. 2017) ............................................ 5, 7, 8, 9, 27

**State Cases**

*Brush & Nib Studio, LC v. City of Phoenix*,
　　448 P.3d 890 (Ariz. 2019) ......................................................... 19, 21, 22

*Deer Valley Unified Sch. Dist. No. 97 v. Houser*,
　　152 P.3d 490 (Ariz. 2007) ......................................................... 24, 25, 26

*Donovan v. Yavapai Cty. Cmty. Coll. Dist.*,
　　423 P.3d 403 (Ariz. Ct. App. 2018) ...................................................... 25

*Havasupai Tribe of Havasupai Reservation v. Arizona Bd. of Regents*,
　　204 P.3d 1063 (Ariz. Ct. App. 2008) ..................................................... 25

*Home Builders Ass'n of Cent. Ariz. v. Kard*,
　　199 P.3d 629 (Ariz. Ct. App. 2008) ...................................................... 26

*Martineau v. Maricopa County*,
　　86 P.3d 912 (Ariz. Ct. App. 2004) ....................................................... 26

*Merrick v. Ryan*,
　　No. 1 CA-CV 14-0639, 2015 WL 5657296 at *2
　　(Ariz. Ct. App. Sept. 24, 2015) ........................................................... 20

*Griffith v. Butte Sch. Dist. No. 1*,
　　244 P.3d 321 (Mont. 2010) ....................................................... 17, 18, 21

*State v. Hardesty*,
　　214 P.3d 1004 (Ariz. 2009) ............................................................... 8

*State v. Mabery Ranch, Co.*,
　　165 P.3d 211 (Ariz. Ct. App. 2007) ...................................................... 26

*Yollin v. City of Glendale*,
　　191 P.3d 1040 (Ariz. Ct. App. 2008) ................................................. 25, 26

iv

## Statutes

42 U.S.C. § 2000bb-1(c) .................................................................................................. 19

42 U.S.C. § 2000bb-2(1) .................................................................................................. 19

A.R.S. § 12-821.01 ............................................................................................................ 5

A.R.S. § 12-821.01(A) ...................................................................................................... 24

A.R.S. § 15-341(E) ............................................................................................................ 7

A.R.S. § 15-1401(7) .......................................................................................................... 8

A.R.S. § 15-1443(C) .......................................................................................................... 8

A.R.S. § 41-1493(3) ..................................................................................................... 8, 19

A.R.S. § 41-1493.01 ......................................................................................................... 20

A.R.S. § 41-1493.01(A) .................................................................................................... 20

A.R.S. § 41-1493.01(B) .................................................................................................... 20

A.R.S. § 41-1493.01(D) ......................................................................................... 8, 19, 27

A.R.S. § 41-1493.01(E) .................................................................................................... 21

## Rules

Fed. R. Civ. P. 15(a)(2) ..................................................................................................... 5

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 1, 5

# I.    Introduction

Plaintiffs Larissa Waln ("Larissa") and Bryan Waln ("Bryan") have filed a First Amended Complaint, ECF No. 7, that provides detailed factual allegations regarding how Defendants violated the United States Constitution, the Arizona Constitution, and Arizona's Free Exercise of Religion Act ("FERA") by refusing to allow Larissa to attend her high school graduation because her graduation cap was adorned with traditional Native American beading and a sacred eagle plume. Defendants now seek to terminate this lawsuit at the pleading stage based on a number of arguments that are legally and factually incorrect. As explained in the following Memorandum and Points of Authorities, Larissa and Bryan's detailed allegations are more than sufficient to overcome a Rule 12(b)(6) motion, and thus Defendants' Motion to Dismiss should be denied.

# II.    Memorandum and Points of Authorities

## A.    Factual Allegations

Larissa is an enrolled member of the Sisseton Wahpeton Oyate Tribe, a federally recognized Indian tribe, and she was a senior at Valley Vista High School in the Dysart School Unified District (the "District") in Arizona in the spring of 2019. First Am. Compl. (hereafter, "FAC"), ECF No. 7, ¶¶ 2, 18, 28–29. Bryan is a member of the Rosebud Sioux Tribe and is Larissa's father. *Id.* ¶¶ 2, 19. In April of 2019, Bryan and Larissa began to traditionally bead Larissa's graduation cap, just as Bryan had done for his older children who had graduated from the Desert Vista High School in the Phoenix area in 2015 and 2017. *Id.* at ¶¶ 33, 35, 51. Beading a graduation cap is a cultural and religious practice of the Rosebud Sioux and the Sisseton Wahpeton Oyate. *Id.* at ¶¶ 34-35. Beading often begins with praying and smudging, a Native American religious practice involving the burning of sage or other medicinal plants, and for Bryan and Larissa it took approximately 48-hours of meticulous work to complete the cap. *Id.* ¶¶ 2, 33–37. Larissa was also gifted a sacred eagle plume by her paternal grandmother that was blessed in a religious ceremony and was to be worn on her graduation cap. *Id.* ¶¶ 2, 38–40. Eagle plumes are objects of religious and cultural significance to many Native American tribes, including the Rosebud Sioux

and the Sisseton Wahpeton Oyate. *Id.* ¶¶ 12, 41–46. Larissa's cap also included a medicine wheel, which is a sacred symbol that represents various religious and spiritual aspects of the universe. *Id.* ¶¶ 47–50. Larissa wanted to observe her religion and culture by wearing her beaded cap and sacred eagle plume during her high school graduation ceremony, which is a deeply significant event to Larissa and Bryan. *Id.* ¶¶ 12, 37, 45–46.

On May 6, 2019, Larissa learned at a senior meeting from Assistant Principal Brad Larremore that she may not be permitted to wear her beaded cap and eagle plume during her graduation ceremony. *Id.* ¶ 52. Bryan contacted Assistant Principal Larremore and explained the religious significance of the beaded cap and eagle plume, but Assistant Principal Larremore refused Bryan's request for a religious accommodation. *Id.* ¶¶ 53–54. On May 9, 2019, Bryan emailed a letter to Valley Vista High School Principal Roberta Lockhart, Assistant Principal Larremore, Assistant Principal Steven Pierce, District Superintendent Quinn Kellis, and members of the District's Governing Board to express his frustration with Larissa not being allowed to wear her cap or express her religious traditions in a harmless manner. *Id.* ¶ 56. On May 10, 2019, Bryan met with Principal Lockhart and again explained the religious significance of the beaded cap and eagle plume, but Principal Lockhart again refused Bryan's request for a religious accommodation. *Id.* ¶ 58. On May 13, 2019, Bryan emailed members of the District's Governing Board Christine Pritchard, Jay Leonard, Dawn Densmore, Traci Sawyer-Sinkbeil, and Jennifer Tanner (the "Governing Board Members"), as well as Principal Lockhart and Superintendent Kellis, and again explained the religious significance of the eagle plume and beaded cap. *Id.* ¶¶ 61–62. On May 13, 2019, the Native American Rights Fund ("NARF") sent a letter to Superintendent Kellis on behalf of Larissa and Bryan again explaining the religious significance of the eagle plume and explaining the legal protections afforded to the free exercise of religion. *Id.* ¶ 63. Bryan met with Superintendent Kellis on May 14, 2019, and Superintendent Kellis was adamant that Larissa would not be permitted to wear her eagle plume on her cap, but offered to allow her to wear it in her hair, around her neck, or under her robe, but Bryan explained that covering up the eagle plume would be desecrating to his

religion. *Id.* ¶¶ 44, 64–69. In a May 15, 2019 letter, the District responded to the NARF letter through legal counsel, which stated that "[t]he District has imposed a reasonable restriction on student speech through its commencement dress code," and also stated that the District denies the request to permit Larissa to adorn her cap with beads and an eagle plume. *Id.* ¶¶ 70–71. On May 15, 2019, the ACLU of Arizona sent a letter to Superintendent Kellis and the Governing Board President on behalf of Larissa and Bryan, explaining how FERA protects Larissa's exercise of religion. *Id.* ¶ 73. The District responded through legal counsel on May 15, 2019, in a letter that only addressed law relating to free speech applicable to employees, not the free exercise of religion of a student. *Id.* ¶ 74. The ACLU replied by letter on the same day, pointing out that the law cited by the District's attorneys was irrelevant to Larissa's request for a religious accommodation under Arizona's FERA. *Id.* ¶ 75. During this time period, Bryan experienced extreme stress, anger, and frustration; he got little sleep; and he spent many hours researching the law and writing letters to try to get the District to respect his and Larissa's religious beliefs. *Id.* ¶¶ 76–77. Larissa also experienced extreme stress, sadness, depression, and frustration, and had frequent migraine headaches. *Id.* ¶ 78.

On graduation day, May 16, 2019, Larissa traveled with her family while wearing her gown and holding her beaded cap and sacred eagle plume to the State Farm Stadium in Glendale, Arizona, which was the site of the Valley Vista High School graduation ceremony. *Id*. ¶ 79. Some of Larissa's family had traveled all the way from South Dakota to watch the graduation. *Id*. Scared and nervous, Larissa went to the door of the stadium. *Id*. ¶¶ 79–80. At the door, Assistant Principal Pierce and other Valley Vista High School officials refused to allow Larissa to enter the building, forcing her to turn and walk away. *Id.* ¶¶ 3, 79–80. Walking away, Larissa felt shame and humiliation as she had to walk past a long line of her fellow classmates. *Id*. ¶¶ 80–81. In the end, her graduation turned into a day of trauma, stress, embarrassment, and severe emotional distress. *Id.* ¶¶ 81–82. Yet, that same day, another student in the District was permitted to wear a breast cancer awareness sticker on his graduation cap at the Shadow Ridge High School graduation, which was also

held at the State Farm Stadium after the Valley Vista High School graduation. *Id.* ¶¶ 5, 83–88. Other students in the District were also permitted to express their education achievement by wearing cords, sashes, medals, and other items for their graduation ceremony. *Id.* ¶ 90. Since this event, Larissa and Bryan have both had feelings of depression, anger, and outrage as result of the Defendants' discriminatory conduct. *Id.* ¶¶ 93–94.

**B.     Response to Defendants' Background Allegations**

Defendants' assertion that the District "does not have a board approved, district-wide policy regarding graduation dress," Defs.' Mot. to Dismiss (hereafter, "MTD"), ECF No. 29, at 2, is incorrect and contrary to the allegations in the First Amended Complaint. The District did have a graduation dress policy, as evident from the May 15, 2019 letter from the District's legal counsel. *Id.* ¶¶ 70–71 ("*The District* has imposed a reasonable restriction on student speech through *its commencement dress code*") (emphasis added); *see also* FAC Ex. 2 at 2 ("*The District's commencement dress code* requires all students to wear a cap and gown with tassel without adornment or alteration while participating in the commencement exercises.") (emphasis added). The District's graduation dress policy was also made clear at Bryan's May 14, 2020 meeting with Superintendent Kellis, where Bryan's request for a religious accommodation was refused. *Id.* ¶¶ 64–69. Defendants also make a number of factual assertions that are outside the scope of the pleadings and should be disregarded for purposes of a motion to dismiss, including (1) "the graduation dress code was set by the District administration and implemented at the various ceremonies by each high school's administration," (2) "Plaintiffs did not request the matter to be placed on the Governing Board's May 8, 2019 meeting agenda nor did they attend that meeting to address the Board during public comment," and (3) at the graduation venue Assistant Principal Pierce "reviewed [Larissa's] options with her," and Larissa "declined to wear an unadorned cap and gown, declined the offered accommodations, and instead chose not to attend the ceremony." MTD at 3.  In fact, Larissa was not provided the accommodations that the law requires, and she was improperly denied entry to the graduation due to her

beaded cap and eagle plume. FAC ¶¶ 3, 80. Defendants' assertion that the student that wore a breast cancer sticker on his cap "evaded the graduation dress code," MTD at 4, is also outside the scope of the pleadings and should be disregarded. Plaintiffs allege that this student wore the sticker "in full view of the District and school faculty," FAC ¶ 85, which also contradicts Defendants' claim that Plaintiff do not allege that any of the individual defendants approved or had knowledge of the sticker, MTD at 4.

### C.    Legal Standard for a Motion to Dismiss

When analyzing a complaint under Rule 12(b)(6), the Court must "assume all factual allegations are true and construe them in the light most favorable to the plaintiff[s]." *Frudden v. Pilling*, 742 F.3d 1199, 1202 (9th Cir. 2014). Courts also presume that the general allegations in the complaint embrace those specific facts necessary to support the claims. *See Syed v. M-I, LLC*, 853 F.3d 492, 499, n.4 (9th Cir. 2017). If the complaint pleads "enough facts to state a claim to relief that is plausible on its face," it will survive a motion to dismiss. *Williams v. Alhambra Sch. Dist. No. 68*, 234 F. Supp. 3d 971, 979 (D. Ariz. 2017). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 977–78 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). If the Court finds that a claim is deficiently pled, plaintiffs should be granted leave to amend their complaint "unless it is clear the complaint cannot be saved by any amendment." *Steadfast Ins. Co. v. Nat'l Fire & Marine Ins. Co.*, No. CIV. 13-00724-PHX-PG, 2013 WL 6709956, at *5 (D. Ariz. Dec. 19, 2013); *see also* Fed. R. Civ. P. 15(a)(2) (leave to amend should be "freely" given "when justice so requires").

### D.    Bryan Waln Has Standing

Defendants' argument that Bryan lacks standing is incorrect. MTD at 4–5. To establish Article III standing, "a plaintiff must have suffered an injury in fact that is fairly traceable to the challenged conduct, and it must be likely that the injury would be redressed by a favorable decision." *Buono v. Norton*, 371 F.3d 543, 546 (9th Cir. 2004) (quotation marks omitted); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

Plaintiffs' allegations are sufficient to establish Bryan's standing in his own right for both the Fourth Cause of Action and Fifth Cause of Action. Plaintiffs allege that Bryan's free exercise of religion under the Arizona Constitution and FERA was burdened because:

> Bryan collaborated with Larissa on all aspects of her regalia and personally beaded Larissa's graduation cap, as inter-generational participation is a critical aspect of preparation of the graduation regalia. Larissa's planned appearance was a manifestation of their shared sincere religious beliefs, which were inextricably linked to father and daughter's place within a shared tribal community.

FAC ¶ 148. Plaintiffs also allege that Bryan's free speech rights under the Arizona Constitution were violated because he was a co-creator of "Larissa's sacred religious attire," which Defendants unconstitutionally prohibited at the high school graduation. *Id.* ¶ 155. Indeed, Bryan's grandfather was taken from his family and forced to live in a boarding school and thus, Bryan became afraid to teach his children and grandchildren the traditional cultural ways for fear that they would also be taken away. *Id.* ¶ 11. It is clear that passing on culture, religion, and seeing his daughter graduate is immensely important to Bryan. *Id.* ¶¶ 2, 11, 148. Defendants' unconstitutional actions also caused Bryan "extreme stress," anger, and frustration, *id.* ¶¶ 76–77, and deprived him of being able to observe his daughter participate in her once-in-a-lifetime high school graduation ceremony, which is a deeply significant event for him, his family, and his tribe, *id.* ¶¶ 12, 37, 43, 45, 46. Bryan has thus adequately alleged an "injury-in-fact" sufficient for standing. *See Moss v. Spartanburg Cty. Sch. Dist. Seven*, 683 F.3d 599, 607 (4th Cir. 2012) (finding parent had standing in own right due to "feelings of marginalization and exclusion" and changes in parent's conduct resulting from alleged unlawful activity). Contrary to Defendants' arguments, Bryan is asserting his own legal interests, not the legal interests of Larissa. *See* MTD at 4.

**E.     The Governing Board Members Do Not Have Legislative Immunity**

Defendants contend that the Governing Board Members have legislative immunity from both federal law and state law claims. MTD at 5–6. This is incorrect. For the federal claims, legislative immunity turns on "the character and effect" of the act at issue. *Cmty. House, Inc. v. City of Boise, Idaho*, 623 F.3d 945, 960 (9th Cir. 2010). The four factors to

6

consider to determine whether an action is administrative or executive and not legislative are "(1) whether the act involves *ad hoc* decisionmaking, or the formulation of policy; (2) whether the act applies to a few individuals, or to the public at large; (3) whether the act is formally legislative in character; and (4) whether it bears all the hallmarks of traditional legislation." *Id.*; *see also Bechard v. Rappold*, 287 F.3d 827, 829 (9th Cir. 2002). Defendants have not even attempted to meet their burden in showing these factors favor a finding of legislative immunity here, which alone warrants rejection of Defendants' request for dismissal. *See Sanches v. City of Crescent City*, No. C-08-1395-MEJ, 2009 WL 650247, at *7 (N.D. Cal. Mar. 10, 2009).

In fact, each of the four factors weighs against dismissal. Defendants' denial of Larissa's request to wear her beaded cap and eagle plume was *ad hoc* decision-making because it was specifically directed at Larissa. *See Reza v. Pearce*, No. CV 11-01170-PHX-FJM, 2012 WL 1392991, at *2 (D. Ariz. Apr. 23, 2012) ("Decisions that are directed towards a specified individual are normally considered to be ad hoc.") (quotation marks omitted). The District's act also applied only to a few individuals rather than the public at large because the District denied Larissa's request to wear Native American religious regalia but allowed other students to wear expressive messages on their graduation caps. FAC ¶¶ 80–88. This act was also not formally legislative in character and did not bear any of the hallmarks of traditional legislation, such as being voted on, being publicly debated, or being written down in a formal document. *Reza*, 2012 WL 1392991, at *2 ("[The act] did not involve the proposal or passage of a bill, ordinance, resolution, rule, vote, or other formal legislative act."). Legislative immunity thus does not apply to Plaintiffs' federal claims. *Id.* At a minimum these are factual questions that are premature to decide at the pleadings stage.

The Governing Board Members also do not have legislative immunity for the state law claims because under Arizona law, the immunity for civil liability for school board members does not apply if the board members "are guilty of gross negligence or intentional misconduct." A.R.S. § 15-341(E); *see also Williams*, F. Supp. 3d at 979 n.5. Defendants

omit this important limitation when quoting the statute. *See* MTD at 5. Plaintiffs have alleged that the Plaintiffs repeatedly informed the Governing Board Members of the religious significance of the beaded cap and eagle plume, and also informed that the failure to provide an accommodation would violate the law. FAC ¶¶ 62–63, 74–75. These allegations are sufficient to establish at the pleadings stage that the Governing Board Members' failure to provide an accommodation and prevent a clear constitutional violation constituted gross negligence or intentional misconduct. *Id.* ¶ 95. Defendants also incorrectly argue that A.R.S. § 15-1443(C) also provides them with immunity, but this statute applies to "community college district boards," not high school district boards. *See* A.R.S. § 15-1401(7) (defining "district" as "a community college district"); *Williams*, 234 F. Supp. 3d at 979 n.5.[1]

## F. The Governing Board and Individual Defendants are Properly Named as Defendants

Plaintiffs do not oppose the dismissal of the "Valley Vista High School." Plaintiffs do oppose dismissal of the "Dysart School District Governing Board" as a defendant because FERA specifically authorizes claims against the "board" of a school district. *See* A.R.S. § 41-1493.01(D) (allowing claims against a "government"); A.R.S. § 41-1493(3) (defining "government" to include a "political subdivision" of a state); A.R.S. § 41-1493(6) (defining "political subdivision" to include both a "school district" and a "board . . . of a . . . school district."). Plaintiffs also oppose dismissal of the "Individual Defendants."[2] MTD at 6. Plaintiffs are permitted to sue both a school district and members of a school board when the board is also named in its individual capacity. *See Williams*, 234 F. Supp. 3d at

---

[1] This statute also only provides immunity for "actions taken in good faith within the scope of [the board members'] authority." A.R.S. § 15-1443(C). Plaintiffs' allegations of the Governing Board Members' refusal to provide an accommodation, discussed above, are sufficient to establish that the Governing Board Members did not act in good faith or within the scope of their authority.

[2] The "Individual Defendants" are the Governing Board Members Pritchard, Leonard, Densmore, Sawyer-Sinkbeil, and Tanner, Superintendent Kellis, Principal Lockhart, Assistant Principal Larremore, and Assistant Principal Pierce. FAC ¶ 95.

978. Here, Plaintiffs have named the District as a defendant as well as the Governing Board Members and the District's employees in both their official and individual capacities. FAC ¶¶ 22, 23, 25–27. Thus, the Governing Board and Individual Defendants should not be dismissed (nor should the District, which Defendants do not request).

### G. Plaintiffs Have Adequately Alleged Their Section 1983 Claims

Defendants' argument that Plaintiffs' Section 1983 claims do not sufficiently allege a policy, custom, or practice must be rejected. MTD at 7. To bring a Section 1983 claim against a school board, a plaintiff "must demonstrate that the violation occurred as a result of a 'deliberate policy, custom, or practice.'" *Williams*, 234 F. Supp. 3d at 983 (quoting *Galen v. Cty. of L.A.*, 477 F.3d 652, 667 (9th Cir. 2007)). Bryan and Larissa have done just that. Plaintiffs' First Amended Complaint alleges that the District, through its attorneys, sent a letter dated May 15, 2019, stating:

> *The District* has imposed a reasonable restriction on student speech through *its commencement dress code* to preserve the sanctity and formality of the commencement ceremony. This restriction was communicated in a timely manner to Valley Vista parents and guardians on or about April 25, 2019.

FAC ¶ 71 (emphasis added). This letter, which is attached to the First Amended Complaint as Exhibit 2, further states that "*The District's commencement dress code* requires all students to wear a cap and gown with tassel without adornment or alteration while participating in the commencement exercises." FAC Ex. 2 at 2 (emphasis added). Plaintiffs also allege that during the May 14, 2019 meeting with Bryan, Superintendent Kellis refused to allow Larissa to wear her religious regalia at the graduation ceremony. FAC ¶¶ 65–69. Plaintiffs also allege that Larissa was turned away at the door to her graduation for wearing her eagle plume and beaded cap. *Id.* ¶¶ 3, 80.

These allegations clearly establish that the District did have a "policy, custom, or practice" of prohibiting students from altering or adorning their graduation caps and gowns, and this policy provided no accommodation for Native American religious regalia. This policy is sufficient to establish a Section 1983 claim. *See C.R. v. Eugene Sch. Dist. 4J*, 835

F.3d 1142, 1147 n.1 (9th Cir. 2016) ("policy, custom, or practice" requirement met when student disciplined pursuant to school district policy).

Plaintiffs also allege that although Larissa was prohibited from wearing Native American religious regalia at graduation, another student in the District was permitted to participate in his graduation ceremony with a breast cancer awareness sticker on his cap. *Id.* ¶¶ 80–88. Other students were also permitted to wear cords, sashes, medals, and other items to express their educational achievement. *Id.* at ¶ 90. These allegations are sufficient to establish that the District allowed exceptions to its graduation dress policy for certain types of expressive content, but not for Native American religious regalia. These allegations further confirm that the District had a discriminatory policy sufficient to establish a Section 1983 claim.

The paragraphs of the First Amended Complaint quoted by Defendants do not allege that the District did not have a discriminatory policy, custom or practice. MTD at 7 (citing FAC ¶¶ 92, 53, 66, 89). Rather, the quoted passages simply describe reasons why the District should have *changed* its graduation dress policy to provide an accommodation for Larissa, as the Plaintiffs requested. Plaintiffs' Section 1983 claims are also not premised upon a *respondeat superior* theory, MTD at 7, because, as the May 15, 2019 letter from the District's attorneys makes clear, the graduation dress policy was clearly a policy of "[t]he District" itself. *See* FAC ¶ 71; FAC Ex. 2 at 2. Plaintiffs' Section 1983 claims are thus adequately pled.

## H. Defendants Lack Qualified Immunity

Defendants argue that the Individual Defendants are entitled to qualified immunity on Plaintiffs' First, Second, and Third Causes of Action because they did not violate a clearly established right. MTD at 7–11. This is incorrect. "In determining whether a government official is entitled to qualified immunity the court must consider '(1) whether, taking the facts in the light most favorable to the nonmoving party, the government official's conduct violated a constitutional right, and (2) whether the right was clearly established at the time of the alleged misconduct.'" *Ryan v. Mesa Unified Sch. Dist.*, 64 F.

Supp. 3d 1356, 1361–62 (D. Ariz. 2014) (quoting *C.F. ex rel. Farnan v. Capistrano Unified School Dist.,* 654 F.3d 975, 986 (9th Cir. 2011)). "If the answer to either is 'no,' the official cannot be held liable for damages." *Id.*

With regard to the first prong, Defendants rely upon their arguments in Sections (e)–(g) of their Motion. MTD at 7. These arguments are unavailing, as explained in Sections I–K, below. Plaintiffs have adequately stated claims that the Individual Defendants' conduct violated Plaintiffs' constitutional rights to free exercise, free speech, and equal protection.

Defendants additionally argue that Plaintiffs' rights were not "clearly established," MTD at 7–11, but this is also incorrect. In order to find that the underlying right is clearly established "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). "*This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful,* but it is to say that, in the light of preexisting law, the unlawfulness must be apparent." *Id.* (emphasis added) (internal citations omitted). "[Q]ualified immunity has never required there be a case precisely on point." *Milke v. City of Phoenix*, No. CV-15-00462-PHX-ROS, 2016 WL 5346364, at *4 (D. Ariz. July 6, 2016) (citing *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). All of Plaintiffs' constitutional rights were clearly established at the time of the violation.

## 1. Larissa's Free Exercise Rights Are Clearly Established

In 2017, two years before Larissa's graduation, the Supreme Court made clear that "express discrimination against religious exercise" is subject to the "strictest scrutiny." *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2022 (2017). In *Trinity Lutheran*, the Supreme Court recognized that it "has repeatedly confirmed that denying a generally available benefit solely on account of religious identity imposes a penalty on the free exercise of religion that can be justified only by a state interest of the highest order." *Id.* at 2019 (quotation marks omitted). Plaintiffs have alleged that Defendants' policy regarding graduation dress discriminated against Larissa's Native

American religious beliefs, because Defendants permitted and accommodated secular messages expressed on the graduation attire of some students, including a breast cancer awareness sticker, but denied that accommodation for her religious beliefs. FAC ¶ 101. Plaintiffs have also alleged that Defendants do not have any compelling interest to suppress one student's "silent, non-disruptive expression of religious conviction, while simultaneously permitting other students to express secular messages on their graduation caps." *Id.* ¶ 102. Larissa was thus deprived of participating in her graduation ceremony, which is a public benefit, because of the religious nature of her graduation cap adornments, which is a violation of her clearly-established rights. *See Trinity Lutheran*, 137 S. Ct. at 2021 ("[Defendant's] policy expressly discriminates against otherwise eligible recipients by disqualifying them from a public benefit solely because of their religious character."); *Our Peculiar Family v. Inspire Charter Sch.*, No. 2:20-CV-00331-ODW-JCX, 2020 WL 3440562, at *4 (C.D. Cal. June 23, 2020) (right to be "free from express religious discrimination was clearly established since at least *Trinity Lutheran*"). Defendants should have understood that their discriminatory conduct violated Larissa' free exercise rights, particularly since Defendants' own policy also recognizes the right to be free from religious discrimination. FAC ¶ 92.

Defendants reliance on the *Griffith* and *Dreaming Bear* cases is misplaced because neither of these out-of-circuit cases involved allegations of express discrimination based on religious beliefs—*i.e.*, that other students at the graduation were permitted to express secular non-school-related messages on their graduation cap, yet religious expressions were denied. MTD at 9 (citing *Griffith v. Caney Valley Pub. Sch.*, 157 F. Supp. 3d 1159 (N.D. Okla. 2016) and *Dreaming Bear v. Fleming*, 714 F. Supp. 2d 972 (D.S.D. 2010)). Further, these cases were decided before *Trinity*, in which the Supreme Court made clear that discrimination against religious exercise would be subject to the strictest scrutiny. Defendants' reliance on Arizona House Bill 2120 is also misplaced because the mere existence of proposed state legislation provides no information as to whether rights are clearly established under *federal* law. MTD at 9–10. Defendants' arguments that

12

Defendants are entitled to qualified immunity if they reasonably believe their conduct complies with the law, even if they make a mistake of law or fact, MTD at 10, must be rejected because Defendants' beliefs are factual findings that are outside of the complaint, and because Plaintiffs have alleged that Defendants were repeatedly informed that their conduct was in violation of the law. FAC ¶¶ 63, 73, 75. Finally, Defendants' reliance on *Lassonde* and *Santa Fe Independent School Dist.* is misplaced, MTD at 10, because Defendants' claim that their graduation dress policy was motivated by a desire to avoid an Establishment Clause violation is outside the scope of the pleadings, and notably that justification was never made in Defendants' letters attached to the First Amended Complaint. At a minimum this is a factual question that is premature to resolve at this stage. Additionally, there is no risk that providing an accommodation for Larissa would have amounted to "coerced participation in a religious practice," by anyone else at the graduation. *Lassonde v. Pleasanton Unified Sch. Dist.*, 320 F.3d 979, 984 (9th Cir. 2003).

### 2. Larissa's Free Speech Rights Are Clearly Established

In *Frudden v. Pilling*, the Ninth Circuit held that content-based exemptions in a school uniform policy were subject to strict scrutiny. 742 F.3d at 1206–07. Here, similarly, Plaintiffs have alleged that Defendants' policy restricting graduation dress was not "content-neutral" because although Larissa was prohibited from wearing her beaded cap and eagle plume, the Defendants permitted students other than Larissa to have expressive messages on their graduation caps, including a breast cancer awareness sticker, FAC ¶ 160, and also permitted students to express their educational achievements by wearing cords, sashes, medals and other items, *id.* ¶ 90. Taking these allegations as true, Defendants' graduation dress policy is subject to strict scrutiny, which requires that the restriction must be "a narrowly tailored means of serving a compelling state interest." *Frudden*, 742 F.3d at 1207. Plaintiffs' allegations also establish that the Defendants' conduct fails to meet this standard because Defendants "could have no compelling state interest in advancing one student's interest in promoting breast cancer awareness over Plaintiff Larissa Waln's silent expression of her and her father's sacred religious beliefs." FAC ¶ 160. Plaintiffs have thus

adequately alleged that their free speech rights under the First Amendment were clearly established at the time of the violation, and that Defendants' should have understood that their conduct violated those rights.

Defendants' reliance upon *Griffith* and *Dreaming Bear*, and the draft state legislation in Arizona are misplaced, as explained in the prior section. Defendants' reliance on *Cole*, is also misplaced, MTD at 10, because, again, Plaintiffs have not alleged that Defendants have ever justified their policy based on Establishment Clause grounds, and also because unlike the sectarian, proselytizing graduation speech at issue in that case, providing Larissa with an accommodation for her tribal regalia would not have constituted "coercion of attendance and participation in a religious practice" for anyone else at the graduation. *Cole v. Oroville Union High Sch. Dist.*, 228 F.3d 1092, 1104 (9th Cir. 2000).

### 3. Larissa's Equal Protection Rights Are Clearly Established

Defendants make no arguments that Plaintiffs' Equal Protection claim does not constitute a clearly-established right, nor do they cite any cases supporting such an argument, and thus their request for dismissal of this claim should be dismissed on these grounds alone.[3] Moreover, Plaintiffs allege that Larissa was intentionally and invidiously discriminated against "because of her [Native American] religious beliefs." FAC ¶ 136. Plaintiffs also allege that Larissa was deprived of her right to wear her tribal regalia, which carried enormous religious and cultural significance, while other students were permitted to make additions to their graduation caps of a non-religious nature. FAC ¶ 138. These allegations are sufficient to establish that Larissa had a clearly-established right not to be discriminated against based on her Native American religion. *See Trinity Lutheran*, 137 S. Ct. at 2021; *Our Peculiar Family*, 2020 WL 3440562, at *4.

### I.    Plaintiffs Have Adequately Alleged a Free Speech Violation

Defendants argue that they did not violate Plaintiffs' free speech rights because the

---

[3] If Defendants attempt to assert new arguments or authorities in their Reply brief on this or any other issue, Plaintiffs will request an opportunity to file a surreply to address these new arguments or authorities.

graduation attire constitutes "school-sponsored speech," and it was "reasonably related to legitimate pedagogical concerns" under *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260 (1988). MTD at 11. This argument is incorrect for multiple reasons.[4]

First, even if Defendants were correct that the *Hazelwood* standard applies (which it does not, as explained below), Plaintiffs have adequately stated a free speech claim. Plaintiffs have alleged that the Defendants prohibited Larissa from wearing her Native American religious regalia to her graduation but allowed other students to wear other expressive messages on their graduation attire, including a breast cancer awareness sticker. FAC ¶¶ 80–88. Defendants have identified no "legitimate pedagogical concern" that would warrant discrimination between these different types of expressive messages, particularly not one that would warrant dismissal of this claim at the pleadings stage. Indeed, this is a factual question for trial, not for a motion to dismiss. Defendants argue that the District has a legitimate pedagogical purpose in "preserving the unity of the class," MTD 11–12, but they do not explain why Larissa's religious regalia would be disruptive to class unity whereas a breast cancer awareness sticker would not. The two out-of-circuit district court cases relied upon by the Defendants are also clearly distinguishable because those cases did not involve allegations that some students were permitted to wear expressive non-school-related messages on their graduation caps while others were not. *See* MTD at 11 (citing *Dreaming Bear*, 714 F. Supp. 2d at 988–89 and *Griffith*, 157 F. Supp. 3d at 1164). Thus, this Court should find that Plaintiffs' First Amendment claims are adequately pled, even under the *Hazelwood* standard advocated by Defendants.[5]

---

[4] Larissa's eagle plume and beaded cap are unquestionably expressive activity protected by the First Amendment. *See* FAC ¶¶ 33–50 (explaining the cultural and religious significance of the eagle plume and beaded cap); *Jacobs v. Clark Cty. Sch. Dist.*, 526 F.3d 419, 428 n.21 (9th Cir. 2008) (student clothing expressing religious beliefs is "unquestionably protected by the First Amendment"). Defendants do not contend otherwise.

[5] At this stage of the proceedings the Court need not consider the issue of whether Plaintiffs are making a facial or as-applied challenge to the Defendants' policy, *see* MTD at 12 n.6, because, as Defendants acknowledge, this distinction "matters primarily as to the remedy appropriate if a constitutional violation is found," but not to the substantive legal tests that are applied. *Isaacson v. Horne*, 716 F.3d 1213, 1230 (9th Cir. 2013).

Second, Defendants are incorrect that the *Hazelwood* standard applies in this case because the Ninth Circuit has expressly held that school dress codes are analyzed under *Tinker v. Des Moines Independent Community School District,* 393 U.S. 503 (1969). *See Jacobs v. Clark Cty. Sch. Dist.*, 526 F.3d 419, 429 (9th Cir. 2008) (applying *Tinker* to school dress code); *see also Dariano v. Morgan Hill Unified Sch. Dist.*, 767 F.3d 764, 776 (9th Cir. 2014) (analyzing restriction on student clothing under *Tinker*); *T.A. v. McSwain Union Elementary Sch.*, No. 1:08-CV-01986, 2010 WL 2803658, at *4 (E.D. Cal. July 16, 2010) (enforcement of student dress code analyzed under *Tinker*). Under a *Tinker* analysis, if the school dress code is viewpoint-based, it is given strict scrutiny, but if it is viewpoint- and content-neutral, it is given intermediate scrutiny. *See Jacobs*, 526 F.3d at 430–35. Under either standard, Plaintiffs have adequately stated a claim.

The Amended Complaint alleges that Defendants' policy restricting graduation dress was not content-neutral because the Defendants permitted students other than Larissa to have expressive messages on their graduation caps, FAC ¶ 160, and also permitted students to express their educational achievements by wearing cords, sashes, medals and other items, *id.* ¶ 90. Taking these allegations as true, Defendants' dress code is subject to strict scrutiny, which means that the restriction must be "a narrowly tailored means of serving a compelling state interest." *Frudden*, 742 F.3d at 1206–07 (finding content-based exemption in school uniform policy was subject to strict scrutiny). Plaintiffs have adequately alleged that Defendants' conduct fails to meet this standard because Defendants "could have no compelling state interest in advancing one student's interest in promoting breast cancer awareness over Plaintiff Larissa Waln's silent expression of her and her father's sacred religious beliefs." FAC ¶ 160.

Alternatively, even if the graduation dress policy were found to be content-neutral and thus intermediate scrutiny applied, the restriction on Larissa's religious regalia would only be upheld if: "(1) it furthers an important or substantial government interest; (2) the governmental interest is unrelated to the suppression of free expression; and (3) the incidental restriction on alleged First Amendment freedoms is no greater than is essential

16

to the furtherance of that interest." *Jacobs*, 526 F.3d at 434 (quotation marks omitted). Plaintiffs have adequately alleged that this standard cannot be met because prohibiting Larissa from wearing the sacred eagle plume and traditionally-beaded cap was not disruptive to any legitimate pedagogical interest and so did not further any important or substantial government interest. FAC ¶ 161. Additionally, the Defendants' interest was plainly related to the suppression of free expression, as evidenced by the accommodations provided to the expressive activity of other students, and the incidental restrictions on Plaintiffs were greater than essential to the furtherance of that interest. *Id.* Defendants' Motion does not show that either of these standards of scrutiny is met, let alone met as a matter of law, and thus it would be premature to dismiss Plaintiffs' free speech claims.

Third, Defendants contend that "Larissa and her classmates' graduation attire was school-sponsored speech," but this is incorrect. MTD 11. Under *Hazelwood*, school-sponsored speech is "school-sponsored publications, theatrical productions, and other expressive activities that students, parents, and members of the public might reasonably perceive to bear the imprimatur of the school." 484 U.S. at 271. Clothing worn by students does not fit into these categories, and the Ninth Circuit has never treated student clothing as school-sponsored speech. *See Jacobs*, 526 F.3d at 429 (finding challenge to dress code did not involve "school-sponsored speech"). Rather, the silent, passive expressive activity at issue here is Larissa's adornments on her graduation cap, which is a personal expression of her own religious and cultural beliefs. There is no risk that the expressive message communicated by this Native American religious regalia would be "erroneously attributed to the school." *Hazelwood Sch. Dist*, 484 U.S at 271; *see also Bd. of Educ. of Westside Cmty. Sch. v. Mergens*, 496 U.S. 226, 250 (1990) ("The proposition that schools do not endorse everything they fail to censor is not complicated."); *Griffith v. Butte Sch. Dist. No. 1*, 244 P.3d 321, 334 ("no objectively reasonable observer could perceive that [plaintiff's] religious references [in a graduation speech] bore the imprimatur of the School District"). Larissa's speech here bears no resemblance to *Hazelwood*, which involved a school's editorial control of a school newspaper that was part of the school curriculum. *Id.* at 268.

Rather, this case more closely resembles *Tinker*, where the school district prohibited students from wearing black arm bands to school in protest of the Vietnam war. 393 U.S. at 504. Here, similarly, the Plaintiffs are challenging Defendants' prohibition on students wearing Native American religious regalia to their graduation.

Defendants cite to *Lassonde v. Pleasanton Unified Sch. Dist.*, in which the court made a general statement that a graduation ceremony as a "school-sponsored function," 320 F.3d at 985, but this case did not decide whether the *Hazelwood* standard applied, and instead addressed whether prohibiting a secular graduation speech was necessary to avoid violating the Establishment Clause. Defendants also rely upon *Dreaming Bear* and *Griffith*, MTD at 11, but these out-of-circuit cases were not controlled by the clear Ninth Circuit case law discussed above that applies *Tinker* to school dress codes. These two decisions were also incorrectly decided. In *Dreaming Bear v. Fleming*, 714 F. Supp. 2d 972, 988–89 (D.S.D. 2010), the court analogized a graduation to a "theatrical production," but unlike a theatrical production, in which all aspects of the show are part of a single expressive activity that could reasonably be attributed to the school as its speech, a graduation can have elements that are clearly expressive activity of students that could not reasonably be attributed to the school. Here, for example, the breast cancer awareness sticker worn by one student is clearly student speech and would be interpreted as such by attendees of the graduation, just as Larissa's religious regalia would have been interpreted as her speech if she had been permitted to wear it. *See Mergens*, 496 U.S. at 250 ("students are mature enough and are likely to understand that a school does not endorse or support student speech that it merely permits on a nondiscriminatory basis"); *Butte Sch. Dist. No. 1*, 244 P.3d at 334. In *Griffith*, the court reasoned that graduation dress is not speech that the school merely "tolerates;" it is speech that the school "affirmatively promotes." 157 F. Supp. 3d at 1164. But this reasoning cannot be squared with the Ninth Circuit case law finding school uniforms are not school-sponsored speech. *See Jacobs*, 526 F.3d at 429. If school uniforms are considered "tolerated" by a school, graduation gowns and caps would be as well. The *Griffith* court's reasoning is also incorrect because adornments that are

added to the top of a graduation cap, whether they be Native American religious regalia or breast cancer awareness stickers, are not "affirmatively promoted" by the school, but rather are expressive activity of the students that a school "tolerates."

Plaintiffs' Free Speech claims are thus adequately pled and should not be dismissed. Defendants' request for dismissal of Plaintiffs' free speech claim under the Arizona Constitution, should be rejected for the additional reason that Defendants have offered no arguments in support of dismissal of this state constitutional claim, nor any discussion of the applicable legal standards. MTD at 11–12.

**J.      Plaintiffs Have Adequately Alleged a Free Exercise Violation**

With regard to Plaintiffs' free exercise claims, Defendants first argue that a FERA claim cannot be brought against an individual under A.R.S. § 41-1493.01(D). MTD at 12. This is incorrect. FERA was enacted after the Supreme Court declared the Religious Freedom Restoration Act of 1993 ("RFRA") unconstitutional as to state laws. *See Brush & Nib Studio, LC v. City of Phoenix*, 448 P.3d 890, 918 (Ariz. 2019). The Arizona Supreme Court has held that "[b]ecause the text and requirements of FERA and RFRA are nearly identical, we rely on cases interpreting RFRA as persuasive authority in construing the requirements of FERA." *Id.* at 919. The language of A.R.S. § 41-1493.01(D) is virtually identical to the language in RFRA; both state that: "A person whose religious exercise [has been/is] burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government. . . ." 42 U.S.C. § 2000bb-1(c); A.R.S. § 41-1493.01(D).[6] Numerous federal courts have interpreted the allowance for "appropriate relief" under RFRA to permit individual-capacity suits against

---

[6] It should be noted that the definition of the term "government" is not identical between RFRA and FERA. RFRA defines the term "government" to include "a branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States, or of a covered entity." 42 U.S.C. § 2000bb-2(1). FERA defines the term "government" to include "this state and any agency or political subdivision of this state." A.R.S. § 41-1493(3). The term "political subdivision" is then defined to include both a "school district" and a "board . . . of a . . . school district." A.R.S. § 41-1493(6). The inclusion of both the school district and the board of a school district in this definition indicates suits can be brought against both the district and the school board members, as Plaintiffs have done in this case.

19

defendants, which is persuasive authority that FERA should be similarly interpreted. *See, e.g., Tanvir v. Tanzin*, 894 F.3d 449, 460–62 (2d Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 301–02 (3d Cir. 2016); *Lepp v. Gonzales*, No. C-05-0566, 2005 WL 1867723 at *8 (N.D. Cal. Aug. 2, 2005); *Jama* v. *United States INS,* 343 F. Supp. 2d 338, 371–72 (D.N.J. 2004).[7] Plaintiffs note that they have also asserted their FERA claim against the District, and Defendants do not contend that a claim against the District is barred by A.R.S. § 41-1493.01(A).

Defendants next argue that Plaintiffs cannot establish that there was a "substantial burden" on Plaintiffs' exercise of their religious beliefs. MTD at 13–14.[8] Again, this is incorrect. First, "courts have no business addressing" whether the religious belief asserted in a religious freedom case is reasonable. *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 724 (2014). The Court should refrain from saying that Larissa's "religious beliefs are mistaken or insubstantial" and instead focus on whether the line drawn reflects "an honest conviction." *Id*. at 725. Here it clearly does.

A substantial burden exists "when government action 'forces' individuals 'to choose between following the precepts of [their] religion' and receiving a government benefit[.]" *Brush & Nib,* 448 P.3d at 919 (quoting *Sherbert v. Verner*, 374 U.S. 398, 404 (1963)).

---

[7] Plaintiffs have located two *pro se* prisoner cases in which judges have interpreted A.R.S. § 41-1493.01 to not permit claims against individuals, but Plaintiffs respectfully submit that these cases were incorrectly decided because they did not address the arguments discussed above regarding how RFRA has been interpreted to allow claims against individuals. *See Al Saud v. Lamb*, No. CV 18-04890-PHX-SPL-JFM, 2020 WL 1904619, at *6 (D. Ariz. Apr. 17, 2020); *Merrick v. Ryan*, No. 1 CA-CV 14-0639, 2015 WL 5657296, at *2 (Ariz. Ct. App. Sept. 24, 2015). Because these were both *pro se* cases, such arguments may not have been presented to these courts by the plaintiffs.

[8] The three elements of a free exercise claim under FERA are (1) that an action or refusal to act is motivated by a religious belief, (2) that the religious belief is sincerely held, and (3) that the governmental action substantially burdened their exercise of religious beliefs. *State v. Hardesty*, 214 P.3d 1004, 1007 (Ariz. 2009) (*en banc*) (*citing* A.R.S. § 41-1493.01(B)). Defendants do not dispute that Plaintiffs' allegations meet the first two elements. Once all three elements are met, the burden shifts to Defendants to demonstrate that their action furthered a "compelling governmental interest" and was "[t]he least restrictive means of furthering that compelling governmental interest." A.R.S. § 41–1493.01(C). And, as noted in footnote 6 above, FERA clearly allows claims against the District and the "board."

Plaintiffs have alleged that:

> The Defendants' refusal to allow Larissa to wear her traditionally beaded cap and eagle plume substantially burdened Larissa's free exercise of her religious beliefs, because it forced her to choose between attending a deeply significant life event or forsaking the fundamental tenets of her religious beliefs. Far from representing a de minimis imposition on Larissa's preferred religious practice, the district's policy refused to allow Larissa to participate in her one and only opportunity to mark a sacred coming-of-age ritual in her tribal community.

FAC ¶ 147. Plaintiffs have thus adequately alleged a substantial burden.

Defendants argue that attending a graduation ceremony is not a "government benefit," MTD at 13–14, but this is clearly incorrect. Courts have recognized that "high school graduation is one of life's most significant occasions." *Lassonde*, 320 F.3d at 984; *see also Butte Sch. Dist.*, 244 P.3d at 336 (delivery of graduation speech was an "important benefit"). Larissa's graduation was an extremely important event to her, Bryan, and her family, and participation in this important event was thus unquestionably a government "benefit or privilege." *Sherbert*, 374 U.S. at 404. Defendants' reliance on *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058 (9th Cir. 2008) is also misplaced because unlike that case, Defendants here have "penalize[d] religious activity by denying the plaintiffs an equal share of the rights, benefits, and privileges enjoyed by other citizens," *id.* at 1071–72.[9] Defendants penalized Larissa's religious activity by denying her the right to participate in her own high school graduation. *See Sherbert*, 374 U.S. at 404.

Defendants next argue that the District's actions satisfy "even the most restrictive standard of review" because they furthered a "compelling governmental interest" through the "least restrictive means." MTD at 14–15. Once again, this is incorrect, and is also a question of fact that should not be decided at the motion to dismiss stage. Plaintiffs have specifically alleged that Defendants "did not have a compelling government interest in

---

[9] FERA also applies a broader definition of "substantial burden" than RFRA, which was the statute at issue in *Navajo Nation. See* A.R.S. § 41-1493.01(E) ("In this section, the term substantially burden is intended solely to ensure that this article is not triggered by trivial, technical or de minimis infractions."). Here, Plaintiffs have alleged more than a "trivial, technical or de minimis infraction[]." *See* FAC ¶ 147.

prohibiting Larissa Waln from wearing this religious attire at her graduation ceremony, particularly when other students in the same school district were permitted to adorn their caps and gowns with other conspicuous (secular) accoutrements," and also that such a prohibition "was not the least restrictive means of furthering" such an interest. FAC ¶¶ 149–50. This is sufficient to state a claim that the standard of review cannot be met here.

Defendants argue that their "compelling government interest" was "complying with the Establishment Clause." MTD at 14. This argument must be rejected at this stage of the case because it is outside the scope of the pleadings and is a question of fact for trial. Plaintiffs have not made any allegations that Defendants have ever attempted to justify their graduation dress policy based on avoiding a violation of the Establishment Clause. If anything, this argument indicates that Defendants' graduation dress policy was specifically targeted at prohibiting religious attire, which actually supports Larissa's claims that she was discriminated against based on her Native American religious beliefs and practices. There is also no risk of an Establishment Clause violation in this case because, unlike the sectarian graduation speeches at issue in *Lassonde*, *Cole*, and *Lee*, Larissa's wearing of her beaded cap and eagle plume is a personal act that in no way would have "coerced" participation in a religious practice by anyone else at the graduation. *Cf. Lassonde*, 320 F.3d at 984; *Cole*, 228 F.3d at 1104; *Lee v. Weisman*, 505 U.S. 577, 587 (1992). At a minimum, there is a factual dispute here regarding Plaintiffs' reason for denying Larissa's request to wear her religious regalia, which precludes dismissal at the pleadings stage.

Defendants' argument that the graduation dress code was the "least restrictive" means to further this interest because Larissa was offered the alternatives of wearing her eagle plume under her regalia or outside the graduation venue, MTD at 15, also fail. To prove that a burden on free exercise of religious beliefs is the least restrictive means to further compelling interest, the state must show that the proposed alternatives are ineffective or impractical based on the circumstances. *Brush & Nib,* 448 P.3d at 923. Defendants have failed to show that *as a matter of law* providing an accommodation that allowed Larissa to wear her religious regalia would have been ineffective or impractical at

furthering a compelling government interest, and Plaintiffs have adequately alleged to the contrary. FAC ¶¶ 149–50. Defendants' offered accommodations were also inadequate because, as Bryan explained to Defendants, the eagle plume needed to be worn on the cap and covering it under the gown or cap would have desecrated its sacredness. FAC ¶¶ 44, 68.

For all of these reasons, Defendants' request for dismissal of Plaintiffs' free exercise claims must be denied. Plaintiffs' request for dismissal of Plaintiffs' constitutional claims in the First Cause of Action and Fourth Cause of Actions should be denied for the additional reason that Defendants' arguments solely address the applicable legal standards for a free exercise claim under FERA, but not the legal standards for claims under the Free Exercise clauses of the U.S. Constitution and the Arizona Constitution. Should Defendants address the constitutional free exercise claims for the first time in their reply, the Plaintiffs will request an opportunity to address those arguments.

### K. Plaintiffs Are Not Asserting a "Class of One" Equal Protection Claim

Plaintiffs are not asserting a "class of one" equal protection claim, as Defendants contend. MTD at 16. A class of one claim is an equal protection claim that is "premised on unique treatment rather than on a classification." *See Nurre v. Whitehead*, 580 F.3d 1087, 1098 (9th Cir. 2009). Here, Plaintiffs' equal protection claim is premised upon Larissa's Native American religion, which is a protected class. *See New Orleans v. Dukes*, 427 U.S. 297, 303 (1976) ("religion" is a "suspect distinction[]" for equal protection purposes). Plaintiffs allege that Larissa was intentionally and invidiously discriminated against "because of her [Native American] religious beliefs." FAC ¶ 136. Plaintiffs also allege that Larissa was deprived of her right to wear her tribal regalia, which carried enormous religious and cultural significance, while other students were permitted to make additions to their graduation caps of a non-religious nature. FAC ¶ 138. These allegations do not assert a "class of one" claim, and Defendants' arguments and case law are thus entirely inapplicable. Defendants' request for dismissal of Plaintiffs' equal protection claim on these grounds must be rejected. MTD at 16.

## L.    Plaintiffs' Notice of Claim Satisfied Arizona Law

Defendants are also incorrect in arguing that Plaintiffs' Notice of Claim did not meet the requirements of A.R.S. § 12-821.01(A). MTD at 16–17.

A.R.S. § 12-821.01(A) provides:

> Persons who have claims against a public entity, public school or a public employee shall file claims with the person or persons authorized to accept service for the public entity, public school or public employee as set forth in the Arizona rules of civil procedure within one hundred eighty days after the cause of action accrues. The claim shall contain facts sufficient to permit the public entity, public school or public employee to understand the basis on which liability is claimed. The claim shall also contain a specific amount for which the claim can be settled and the facts supporting that amount. Any claim that is not filed within one hundred eighty days after the cause of action accrues is barred and no action may be maintained thereon.

This statute "simply requires that claimants identify the specific amount for which they will settle and provide facts supporting that amount." *Deer Valley Unified Sch. Dist. No. 97 v. Houser*, 152 P.3d 490, 493 (Ariz. 2007) (*en banc*). The purpose of this statute is to "allow the public entity to investigate and assess liability, . . . permit the possibility of settlement prior to litigation, and . . . assist the public entity in financial planning and budgeting." *Id.* at 492.

Plaintiffs' Notice of Claim, attached hereto as Exhibit A,[10] provided a detailed explanation of the factual background and legal basis for Plaintiffs' claims and offered to settle the claims "for $1,000,000.00 dollars and the District's agreement to change their policy to allow the accommodation of Native American religious regalia at high school graduations in the District." Ex. A at 9. This Notice of Claim satisfied the statute because it "contain[ed] a specific amount for which the claim can be settled" and "the facts supporting that amount," as required by A.R.S. § 12-821.01(A).

Defendants argue that A.R.S. § 12-821.01(A) requires "each claimant" to file a

---

[10] The Court may take judicial notice of this document for a motion to dismiss. *See MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) ("On a motion to dismiss, we may take judicial notice of matters of public record outside the pleadings."); *Phoenix Newspapers, Inc. v. Ellis,* 159 P.3d 578, 583–84 (Ariz. Ct. App. 2007) (notice of claim is a public record). Plaintiffs have not attached all the exhibits to their Notice of Claim to this brief because the exhibits are not relevant to the issues before the Court.

notice of claim with a certain settlement amount, MTD at 16–17, but this is incorrect. The statute does not require separate notices for each claimant, nor does it use the word "each." Instead, the notice requirement applies to "[*p*]*ersons* who have claims," A.R.S. § 12-821.01(A) (emphasis added), which indicates that multiple "persons" can file a notice of claim together. *See also Deer Valley*, 152 P.3d at 493 ("the statute . . . requires that *claimants* identify *the specific amount* for which *they* will settle . . . .") (emphasis added). Defendants similarly argue that Plaintiffs' Notice of Claim was inadequate because it "did not apportion the settlement that Bryan or Larissa demanded." MTD at 16. But, again, the statute contains no requirement to apportion the amount among each claimant, nor do Defendants cite any case law or authority requiring such apportionment. To the contrary, the statute says "[t]he claim shall also contain *a specific amount* for which the claim can be settled," *id.* (emphasis added), which indicates that a notice of claim is sufficient if it contains a single identifiable sum for which the claimants' notice of claim can be settled. *See also Deer Valley*, 152 P.3d at 493 ("claimants [are required to] identify *the specific amount* for which they will settle . . .") (emphasis added). The Arizona Court of Appeals has also repeatedly ruled that notices of claims are sufficient if they identify a lump sum amount, even if they do not apportion that amount by claim or by defendant. *See Donovan v. Yavapai Cty. Cmty. Coll. Dist.*, 423 P.3d 403, 406 (Ariz. Ct. App. 2018); *Havasupai Tribe of Havasupai Reservation v. Arizona Bd. of Regents*, 204 P.3d 1063, 1080 (Ariz. Ct. App. 2008). This case law further confirms that A.R.S. § 12-821.01(A) does not require "apportionment" by claim or by party, as Defendants contend.

Defendants also argue that Plaintiffs' demand for a change in policy violates the statute. MTD at 17. Once again, this argument has no support in the language of the statute, which does not contain any prohibition on non-monetary relief being included in a notice of claim, and Defendants identify no case law or other authority supporting this argument. This Court should also not read a new requirement into the statute. *See Yollin v. City of Glendale*, 191 P.3d 1040, 1046 (Ariz. Ct. App. 2008) ("The legislature has designed an elaborate scheme to protect the public coffer from excess liability and we see no reason to

add additional burdens to that scheme."). If the Arizona legislature had intended to affirmatively prohibit plaintiffs from requesting any non-monetary relief in a notice of claim, which would have been a severe limitation on plaintiffs' rights because it would essentially require plaintiffs to make a settlement offer that excludes any form of non-monetary relief, the legislature would have expressly stated this limitation in the statute. Moreover, Arizona courts have held that the notice of claim requirement does not apply to claims for non-monetary relief. *See Home Builders Ass'n of Cent. Ariz. v. Kard*, 199 P.3d 629, 636 (Ariz. Ct. App. 2008); *State v. Mabery Ranch, Co.*, 165 P.3d 211, 222 (Ariz. Ct. App. 2007); *Martineau v. Maricopa County*, 86 P.3d 912, 915–16 (Ariz. Ct. App. 2004). Defendants' argument that a notice of claim cannot include a demand for a change in policy is thus an unreasonable reading of the statute because it would mean that the defendants would not be informed as to what is required to settle *all* of the claims against them, including non-monetary claims that are not subject to the notice requirement. That cannot be what A.R.S. § 12-821.01(A) requires, particularly since one of the core purposes of the statute is to "permit the possibility of settlement prior to litigation." *Deer Valley*, 152 P.3d at 493.

There is also nothing "unclear," MTD at 17, about Plaintiffs' request that Defendants "change their policy to allow the accommodation of Native American religious regalia at high school graduations in the District," Ex. A at 9, which is both easily understood and is also what is legally required by FERA and the U.S. and Arizona Constitutions. Plaintiffs' request for a policy change also did not prohibit Defendants from "assessing the risks, liabilities and budget considerations." MTD at 17. To the contrary, Plaintiffs' inclusion of both a sum certain and a demand for a change in policy in the Notice of Claim allowed Defendants to both assess the budgetary impacts of settlement and also permitted the possibility of a full and complete settlement of all of Plaintiffs' claims prior to litigation, which is entirely consistent with the purposes of the notice statute.

## M.     Plaintiffs May Seek Punitive Damages and Declaratory Relief

Plaintiffs may properly seek punitive damages for their federal claims against the

1   Individual Defendants. Punitive damages are available in a Section 1983 case from an
2   individual defendant if the defendant engaged in behavior that was "motivated by evil
3   motive or intent, or . . . involve[d] reckless or callous indifference to the federally protected
4   rights of others." *Williams*, 234 F. Supp. 3d at 987 (quoting *Smith v. Wade*, 461 U.S. 30,
5   56 (1983)). Here, Plaintiffs have alleged that the Individual Defendants showed reckless or
6   callous indifference to the federally-protected rights of the Plaintiffs by not providing an
7   accommodation for Native American religious regalia at graduation, despite repeated
8   requests and detailed explanations as to why such accommodation was legally required.
9   FAC ¶¶ 56–59, 61–69, 73, 75, 95. Plaintiffs' request for punitive damages should thus not
10  be dismissed.

Plaintiffs' request for a declaratory judgment should also not be dismissed because
FERA provides that "[a] person whose religious exercise is burdened in violation of this
section may assert that violation as a claim or defense in a judicial proceeding and obtain
*appropriate relief* against a government." A.R.S. § 41-1493.01(D) (emphasis added). A
declaratory judgment that Defendants have burdened Plaintiffs' religious exercise would
be "appropriate relief." The cases cited by Defendants are distinguishable because here the
state statute affirmatively creates a right for plaintiffs to receive relief that is determined to
be "appropriate," which could include declaratory relief. MTD at 18.

### III.   Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss should be denied. If the
Court finds any of Plaintiffs' claims to be inadequately pled, Plaintiffs request the
opportunity to amend their First Amended Complaint to cure any deficiencies.

RESPECTFULLY SUBMITTED this 21st day of October, 2020.

*/s/ April E. Olson*
April E. Olson (#025281)
Glennas'ba Augborne (AZ#033702)
Carolyn M. "Cammie" Nichols (*Pro Hac Vice*)
Alicia C. Lopez (*Pro Hac Vice*)
**ROTHSTEIN DONATELLI LLP**

Matthew Campbell (*Pro Hac Vice*)
David Gover (*Pro Hac Vice*)
**NATIVE AMERICAN RIGHTS FUND**

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 21st day of October, 2020, I caused a true and correct copy of the foregoing to be filed electronically through the CM/ECF system, which caused all counsel of record to be served, as noted on the notice of electronic filing.

*/s/ Patricia R. Sanchez*
Patricia R. Sanchez, Paralegal